IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 122,713

STATE OF KANSAS,
*Appellee*,

v.

BRENNAN R. TRASS,
*Appellant*.

SYLLABUS BY THE COURT

1.

The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, guarantees criminal defendants the right to assistance of legal counsel during all critical stages of a criminal proceeding.

2.

Whether a criminal defendant has been denied the Sixth Amendment right to assistance of counsel is a constitutional issue over which appellate courts exercise unlimited review.

3.

A criminal defendant may waive the right to counsel through waiver, an intentional and voluntary relinquishment of a known right or privilege. A defendant's waiver of the right to counsel under the Sixth Amendment may be expressly stated or implied by the defendant's conduct.

1

4.

A criminal defendant may forfeit the right to counsel. Unlike waiver, forfeiture results in the loss of a right through some action or inaction.

5.

As a matter of first impression, a defendant may be found to have forfeited the right to counsel regardless of whether the defendant knew about or intended to relinquish the right when the defendant engaged in egregious misconduct, or a course of disruption intended to thwart judicial proceedings. Forfeiture is an extreme sanction in response to extreme conduct that jeopardizes the integrity or safety of court proceedings and should be used only under extraordinary circumstances as a last resort in response to the most serious and deliberate misconduct.

6.

Structural errors are defects affecting the fundamental fairness of the trial's mechanism, preventing the trial court from serving its basic function of determining guilt or innocence and depriving defendants of basic due process protections required in criminal proceedings.

7.

Violation of the Sixth Amendment right to counsel is a structural error affecting the trial mechanism; it requires automatic reversal of a defendant's conviction.

Appeal from Reno District Court; TRISH ROSE, judge. Oral argument held March 27, 2024. Opinion filed September 27, 2024. Reversed and remanded with directions.

*Clayton J. Perkins*, of Capital Appellate Defender Office, argued the cause, and *Meryl Carver-Allmond*, of the same office, was with him on the briefs for appellant, and *Brennan R. Trass*, appellant, was on supplemental briefs pro se.

*Thomas R. Stanton*, district attorney, argued the cause, and *Derek Schmidt*, former attorney general, and *Kris W. Kobach*, attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

STANDRIDGE, J.:  In 2015, the State charged Brennan R. Trass with first-degree felony murder and criminal possession of a firearm for killing Jose Morales during a drug deal. Before trial, the district court appointed multiple attorneys to represent Trass after conflicts with existing counsel arose, which caused significant delay. Two weeks before the trial was scheduled to begin in 2019, the court allowed Trass' attorneys to withdraw based on an alleged conflict in the attorney-client relationship. Finding that Trass had either waived or forfeited his right to counsel by his conduct, the district court ordered Trass to represent himself at trial with the assistance of standby counsel. On the last day of the nine-day trial, Trass grew frustrated with the district court's rulings, refused to participate, and asked to return to the jail. After the judge removed Trass from the courtroom, his standby counsel took over representation for the rest of the trial. The jury convicted Trass as charged.

Trass filed a direct appeal with this court. During the briefing process, the State discovered an unresolved competency issue, so we remanded the case to the district court to determine the feasibility of a retrospective competency hearing and, if feasible, directed the court to conduct the hearing. After determining it was feasible, the district court held a retrospective competency hearing where it found that Trass was competent before and throughout his 2019 trial.

Now back before this court, Trass makes several arguments relating to the retrospective competency hearing. He also alleges a violation of his statutory speedy trial rights, violations of his constitutional rights to counsel and to testify, jury instruction

3

error, insufficiency of the evidence supporting his felony-murder conviction, and cumulative error.

Based on the analysis below, we conclude the district court violated Trass' right to counsel under the Sixth Amendment to the United States Constitution. Because a violation of this fundamental right constitutes structural error affecting the trial mechanism, Trass is entitled to reversal of his convictions for first-degree felony murder and criminal possession of a firearm, and the case is remanded to the district court for a new trial. We also conclude the district court did not violate Trass' statutory right to a speedy trial and the evidence was sufficient to support Trass' felony-murder conviction. Given remand for a new trial is required, we find it unnecessary to address the balance of Trass' claims on appeal, i.e., whether the district court erred in certain respects during the retrospective competency proceedings, whether the district court violated Trass' constitutional right to testify, whether a jury instruction on self-defense was legally appropriate, and whether the cumulative effect of the alleged errors violated Trass' constitutional right to a fair trial.

FACTUAL AND PROCEDURAL BACKGROUND

On August 17, 2015, law enforcement responded to reports of gunfire at a residence in Hutchinson. Once inside, officers located an injured male, later identified as Jose Morales, lying on the floor in a bedroom. Morales had bullet wounds to his left hand and upper abdomen. Despite life-saving efforts, Morales later died from his injuries.

Law enforcement discovered drug evidence inside the residence, including digital scales with methamphetamine residue, two plastic bags of methamphetamine, and various items of drug paraphernalia.

4

Trass later contacted law enforcement and admitted to shooting Morales. Trass said he went to Morales' house to complete a drug transaction that he had started the previous day. While Morales weighed and packaged the methamphetamine, Trass claimed he grew paranoid that Morales and others planned to kill him. Believing Morales was reaching for a gun inside his safe, Trass grabbed a gun from Morales' waistband and fired at least two or three times at him. Trass said he took the gun and a bag of methamphetamine and ran home, where he hid the gun in his basement. Trass said he reported the incident to law enforcement "because he knew he messed up."

The State charged Trass with first-degree felony murder and criminal possession of a firearm. Before trial, the district court appointed multiple attorneys to represent Trass after various conflicts arose. The frequent change in counsel caused several trial continuances, and the trial was finally set to begin in March 2019. Two weeks before trial, the district court allowed the two attorneys then representing Trass to withdraw based on an alleged conflict in the attorney-client relationship. Finding that Trass had waived or forfeited his right to counsel by his conduct, the court ordered Trass to represent himself at the upcoming suppression hearing and trial with the assistance of standby counsel. Both the suppression hearing and trial began as scheduled, where Trass appeared pro se. On the last day of the nine-day trial, Trass grew frustrated with the district court's rulings, refused to participate, and asked to return to the jail. As a result, the district court removed Trass from the courtroom and standby counsel represented Trass for the rest of the trial.

The jury convicted Trass as charged. The district court imposed a life sentence without the possibility of parole for 618 months consecutive to a 20-month term of imprisonment.

Trass filed a direct appeal with this court. During the briefing process, the State notified us of an unresolved pretrial competency issue, so we remanded the case to the district court to conduct a retrospective competency hearing, if feasible. Finding it was feasible, the district court held an evidentiary hearing in February 2023 and concluded that Trass was competent before and during his 2019 trial. Trass' appeal returns to this court.

Jurisdiction is proper. See K.S.A. 60-2101(b) (Supreme Court jurisdiction over direct appeals governed by K.S.A. 22-3601); K.S.A. 22-3601(b)(3)-(4) (life sentence and off-grid crime cases permitted to be directly taken to Supreme Court); K.S.A. 21-5402(b) (first-degree murder is off-grid person felony).

ANALYSIS

Trass raises several issues on appeal. Along with multiple briefs filed by his attorney, Trass filed three pro se briefs. Trass essentially raises the same issues as counsel but provides additional authority and argument. Those issues include: (1) whether the district court erred in certain respects during the retrospective competency proceedings, (2) whether the district court violated Trass' statutory right to a speedy trial, (3) whether the district court violated Trass' constitutional right to counsel, (4) whether the district court violated Trass' constitutional right to testify, (5) whether a jury instruction on self-defense was legally appropriate, (6) whether the evidence was sufficient to support Trass' felony-murder conviction, and (7) whether the cumulative effect of the alleged errors violated Trass' constitutional right to a fair trial. Because resolution of his claim that the district court violated his constitutional right to counsel could impact the outcome of other issues raised, we address it first.

6

I. *Constitutional right to counsel*

*Standard of review*

Trass argues the district court committed structural error when it found he involuntarily waived his Sixth Amendment right to counsel based on his conduct and forced him to proceed pro se at trial with only the assistance of a conflicted standby counsel. Because he is arguing on appeal that the district court unlawfully deprived him of his constitutional right to effective assistance of counsel, Trass asserts the district court's decision is subject to de novo review by this court. The State disagrees, characterizing Trass' argument as one alleging that the district court erred in denying his request to appoint new counsel, which the State contends is subject to an abuse of discretion standard on review. Upon review of the record and the briefs, we agree with Trass that the issue he presents alleges a violation of the constitutional right of assistance of counsel, a question over which we exercise unlimited review. See *State v. Anderson*, 294 Kan. 450, 464, 276 P.3d 200 (2012). We also generally exercise unlimited review over questions related to the rights of assistance of counsel. *State v. Couch*, 317 Kan. 566, 574, 533 P.3d 630 (2023); *State v. Jones*, 290 Kan. 373, 376, 228 P.3d 394 (2010). To the extent the district court made findings of fact when it held Trass waived or forfeited his right to counsel, we apply a bifurcated standard of review by reviewing the court's fact-findings for substantial competent evidence and its legal conclusion based on those facts de novo. See *Couch*, 317 Kan. at 575.

*Additional relevant facts*

Before addressing the merits of Trass' argument, we find it helpful to review in some detail the history of attorney appointments in this case. In all, 11 attorneys entered

7

an appearance for Trass at some point before trial, although it is more accurate to say that Trass was represented by seven sets of attorneys.

August 2015

The district court appointed the Public Defender's Office to represent Trass. Three attorneys in the office were assigned to the case at one point or another.

February 2017

Trass moved for appointment of new counsel based primarily on a failure by the Public Defender's Office to communicate a plea offer and personal family issues preventing the lead attorney in the office assigned to his case from working on the case and communicating with him. Counsel from the Public Defender's Office validated Trass' concerns at the hearing on the motion. The district court granted the motion and appointed Steve Osburn.

April 2017

After reviewing the State's discovery, Osburn promptly moved to withdraw due to a conflict of interest with several of the State's witnesses. The district court granted the motion and appointed Shannon Crane.

Trass moved for new counsel soon thereafter, alleging a conflict of interest and lack of trust because Crane represented his mother and sister's landlord and was currently in the process of evicting them from their home. The district court denied Trass' motion, apparently adopting the State's argument that the eviction issue was not a conflict because it did not directly involve Trass but instead only involved his family.

August 2017

Trass again moved for new counsel, alleging Crane filed a dispositive motion without consulting him as he requested; failed to acknowledge or return his phone calls, emails and letters; and told him when she did talk to him that she was "very busy" and did not have "much time" to discuss his case. At a hearing on the motion, the district court indicated its primary concern was whether Crane felt she could continue to have the type of relationship with Trass necessary to advocate on his behalf. When Crane responded in the negative, the court granted the motion and later appointed Carl Maughan.

February 2018

Maughan moved to withdraw based on the belief that Trass did not trust him and the relationship between them had deteriorated to the point where Maughan was constantly trying to balance how best to represent Trass while actively building "a defense to potential claims of ineffective assistance of counsel and/or civil liability." The district court granted the motion to withdraw and advised Trass it needed to contact the director of the Board of Indigent Defense Services for input on the next appointment. The court later appointed Sam Kepfield.

March 2018

Kepfield moved to withdraw due to the conflict created by his previous representation of an individual in an unrelated case who had been identified as a witness in Trass' case. The district court appointed Kevin Loeffler and Michael Llamas.

9

May 2018

Trass moved for new counsel, alleging he attempted to contact Loeffler by telephone over a dozen times since counsel was appointed two months earlier, but Loeffler failed to acknowledge or return his phone calls. Trass also alleged Loeffler filed motions for continuance and for a competency evaluation without his knowledge, unnecessarily delaying a hearing on his motion to dismiss for speedy trial violations, which was a top priority for him.

June 2018

Loeffler and Llamas moved to withdraw, arguing a conflict of interest developed after Trass told them he believed he was not being properly represented and that they were conspiring with the District Attorney's Office against him. At the hearing on the motion, Loeffler advised the district court that Trass asked him to continue to represent him when they visited before the hearing that morning. But Loeffler went on to say he thought the "relationship has broken down to such an extent that I don't think that I can adequately represent him." The court warned Trass that if conflicts with his attorneys continued, he might end up going to trial without an attorney. The court granted counsels' motion to withdraw and appointed Bobby Hiebert and Monique Centeno.

March 2019

Two weeks before Trass' trial was scheduled to begin in March 2019, Hiebert and Centeno moved to withdraw. The motion alleged that an irreparable rift in the attorney-client relationship existed, and that Trass no longer wanted to work with counsel based on his belief that they were conspiring with the State and working against him. The motion said Trass insisted that counsel take meritless or unnecessary actions, berated

counsel, and communicated with counsel in a disrespectful and racially derogatory manner.

At a March 12, 2019 hearing on the motion to withdraw, counsel provided additional context by detailing the disagreements and conflicts with Trass. As Hiebert was speaking to the court, Trass interrupted by objecting to Hiebert's comments and announced Hiebert and Centeno were fired. Given this outburst, the district court removed Trass from the courtroom. After Hiebert and Centeno finished explaining the reasons for their withdrawal request, the prosecutor detailed the appointment of the many attorneys who previously represented Trass and noted the difficulties in finding conflict-free attorneys. Given the assertions by Hiebert, however, the prosecutor agreed counsel should be permitted to withdraw. The district court judge stated,

> "Well, here's what we're going to do. I will allow the withdraw. The outburst of the defendant today made it evident to me that counsel could not be effective adversaries for Mr. Trass because of his hostility and you have my appreciation, Counsel, much appreciation for stepping in and doing an excellent job.

> "What we're going to do tomorrow . . . is have a hearing where Mr. Trass will be brought back and I'm going to tell him that he is now representing himself. I have no options for appointment. I've conferred with the head of BIDS . . . and she has confirmed to me my ability to require—well, basically to proceed with the defendant representing himself. And then the question, my question to Mr. Trass will be, do you wish to proceed to trial March 25? And we'll go from there."

The next day, March 13, 2019, Trass appeared at a hearing without counsel. The district court advised Trass he would be representing himself: "This hearing this morning is to advise you, Mr. Trass, that I'm finding that you have waived your right to appointed counsel by your conduct. . . . I am finding that appointment of new counsel would be an

11

exercise in futility." After reciting the history of attorney appointments in the case, the judge concluded:

> "As I stated to begin this hearing you have waived your right to appointed counsel. This trial will proceed on March 25 at nine a.m. The next hearing is Monday March 18, this coming Monday at nine a.m. And that is a hearing on your motion to suppress evidence. I am requiring recently appointed Attorney, Bobby Hiebert, to remain as standby counsel. Mr. Hiebert will not be at the table with you, however, he will be in the courtroom during the trial. Those are the orders of the Court. Thank you for your attention."

When Trass tried to speak, the judge would not allow it, stating, "This is not a time for comment. This is the time when I advise you of my rulings." The judge told Trass that any further communication with the court must be by written motion.

After this hearing, the State filed a motion requesting a follow-up hearing for the district court to "advise the defendant of the pitfalls of representing himself, to inquire as to what discovery the defendant may possess, and to inquire as to whether the defendant will be ready to go forth on the motion to suppress and jury trial." The motion stated: "It is the State's position that case law requires the Court to advise the defendant as to the pitfalls of representing himself at trial even in light of the finding that the defendant has waived the right to appointed counsel."

At the scheduled March 18, 2019, hearing, Trass appeared pro se with Hiebert as standby counsel. The court began the hearing by providing the parties with copies of the court rules. With no discussion about the disadvantages of self-representation or inquiry into Trass' receipt of discovery or his readiness to proceed, the court began the suppression hearing. The State offered into evidence several exhibits and presented testimony from five witnesses; Trass cross-examined each witness. Before the evening recess, the prosecutor expressed concerns about Trass' ability to obtain and review all the

12

discovery before trial and other outstanding motions, including the State's motion on the required self-representation advisories. In response, the judge stated:

> "The Court is not continuing this trial. The defendant has known since last October when the discussion was about this trial setting. So to state that the defendant has only had 13 days is not accurate. Defendant waived his right to counsel. He—and I made a record as far as my finding and waiving the right to counsel doesn't mean an automatic continuance. All the same dates apply. The defendant knew or should have known that the Court would make these findings."

At the continued suppression hearing the next day, Trass testified on his behalf. He presented no other evidence but complained about his inability to subpoena witnesses in time for the hearing. After the district court denied Trass' motion to suppress, it took up several of the pro se motions he had filed, including a motion for self-representation. The judge stated,

> "Defendant also yesterday filed a motion for self-representation. On March 13 of this year, just last week, I ruled that the defendant had forfeited his right to appointed counsel and I went through the history of his case, almost four years, in appointing various attorneys, who were either—who Mr. Trass asked to have terminated or the attorneys, themselves, asked to withdraw or sometimes in both actually occurred. The last two attorneys, Mr. Hiebert and Ms. Centeno asked to withdraw. I made my ruling and Mr. Trass stated in court, you're fired, to those attorneys. And I felt the record justified my findings that, Mr. Trass, you forfeited your right to appointed counsel, which leaves you representing yourself. And then we come to your request for self-representation, which in essence is granted because you have forfeited your right to counsel and barring hiring counsel, which you of course have that right to do. I will note that in the four years that you have—I should state you were first placed in custody in 2015 August. In that period of time you had made no request or suggestion to hire an attorney, nor has any hired attorney represented, or entered an appearance on your behalf. But barring your right to hire counsel, you are representing yourself."

The court then moved on to the discovery issues, and the prosecutor again expressed concerns about the volume of discovery provided to Trass and his inability to receive some of it at the jail. The prosecutor noted Trass had requested a 30-day continuance. While agreeing Trass had "brought this on himself," the prosecutor believed this was a reasonable request under the circumstances, stating, "I just don't see how [Trass] can review the discovery before Monday, Judge, and be prepared for trial." Trass addressed the court and detailed the difficulty he had accessing the law library and reviewing the discovery. He reiterated his request for a 30-day continuance but asked for at least 2 to 3 more weeks. The court recognized Trass' limitations and said it would ask the jail to provide him with as much access to the discovery as possible. But the judge denied Trass' request for continuance:

> "Well, this trial is not being continued. This is the 12th trial setting for this case March 25. Some 200 people have been notified that, that may be jurors in this case. Mr. Trass, you . . . have been represented by counsel from August 18, 2015, until March 13, 2019. You via your counsel have had access to the discovery that is part of this case. That consideration goes into my denial of the motion to continue. Also, the court has to consider the witnesses who for the 12th trial setting now have planned on this trial March 25, and as I mentioned the citizens who have been summoned to appear as a potential member of the jury. I am not continuing this case."

On March 20, 2019, Trass moved to withdraw his motion for pro se representation and argued the district court had violated his Sixth Amendment right to counsel by forcing him to proceed pro se. Trass denied he had forfeited or waived his right to counsel and objected to the district court's finding that he had. Claiming he never knowingly or intelligently waived his right to counsel, Trass also asserted that the court failed to advise him of the potential disadvantages of self-representation. The next day, Trass filed a motion alleging ineffective assistance of counsel based on the severe disadvantages resulting from his forced self-representation. It is unclear whether the district court ruled on these motions before trial.

The nine-day jury trial began on March 25, 2019, where Trass appeared pro se with Hiebert as standby counsel. At various points throughout the trial, Trass objected to his forced self-representation, denied that he had chosen to represent himself, and said he "might have sought another remedy" had he known that firing Hiebert and Centeno meant he would be waiving his right to counsel. In response to Trass' suggestion that the court had denied his motion to withdraw his request for self-representation, the judge said,

> "[Y]our motion to withdraw your motion to represent yourself wasn't denied. I ruled that motion moot because I had already ruled that you forfeited your right to appointed counsel which left you either hiring an attorney or representing yourself, and you are here representing yourself and conducting yourself very appropriately and I want to commend you again for that fact."

On the last day of trial, Trass became frustrated with the district court's rulings and accused the court and the prosecutor of colluding to deprive him of his rights. After Trass refused to participate in his defense any further and said he wanted to return to the jail, the judge removed him from the courtroom. Trass did not return for the rest of the trial.

Hiebert took over Trass' defense; he rested the defense's case, appeared at the jury instructions conference, conducted closing argument, provided input in the court's response to a jury question, and appeared for the jury's verdict. Hiebert and Trass each filed posttrial motions. More than once, Hiebert unsuccessfully attempted to withdraw from representation. Despite both Hiebert's and Trass' attempts to remove him, Hiebert continued to represent Trass during posttrial proceedings and sentencing and filed a notice of appeal on Trass' behalf.

15

*Discussion*

The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, guarantees criminal defendants the right to assistance of legal counsel during all critical stages of a criminal proceeding. *Lee v. United States*, 582 U.S. 357, 363, 137 S. Ct. 1958, 198 L. Ed. 2d 476 (2017); *Miller v. State*, 298 Kan. 921, 929, 318 P.3d 155 (2014). An indigent defendant is entitled to have an attorney appointed by the court to represent him or her. *Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963) (The "noble ideal" of fair and impartial criminal adjudications "cannot be realized if the poor man [or woman] charged with [a] crime has to face his [or her] accusers without a lawyer to assist him [or her]."). The right to counsel is a fundamental component of our criminal justice system. See *United States v. Cronic*, 466 U.S. 648, 654, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984) ("'Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his [or her] ability to assert any other rights he [or she] may have.'"). The right to counsel is so central to a fair trial that its denial can never be treated as harmless error. *Chapman v. California*, 386 U.S. 18, 23, n.8, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967); *Jones*, 290 Kan. at 382 (A violation of the Sixth Amendment right to counsel constitutes structural error; "[e]rrors are structural when they 'defy analysis by "harmless-error standards"' because they 'affect[] the framework within which the trial proceeds.'").

But the right to an attorney is not an unqualified right. The Sixth Amendment does not extend to the appointment of counsel of choice or to a meaningful relationship with appointed counsel. *Wheat v. United States*, 486 U.S. 153, 159, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988) ("[T]he essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he [or she] prefers."); *Morris v. Slappy*,

16

461 U.S. 1, 13-14, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983) (rejecting claim that Sixth Amendment guarantees a "'meaningful relationship'" between an accused and counsel); *United States v. Leggett*, 162 F.3d 237, 247 (3d Cir. 1998) ("[T]here is no constitutional right to be represented by a lawyer who agrees with the defendant's trial strategy."); *State v. Brown*, 305 Kan. 413, 424, 382 P.3d 852 (2016) (A defendant does not have the "right to 'compel the district court to appoint the counsel of [his or her] choice.'"); *State v. Williams*, 226 Kan. 82, 88, 595 P.2d 1104 (1979) (A defendant may not demand different appointed counsel "in the absence of good cause being shown."). While a criminal defendant "must be provided a fair opportunity to obtain counsel of his or her choice, this right cannot be manipulated to impede the efficient administration of justice." *State v. Anthony*, 257 Kan. 1003, 1019-20, 898 P.2d 1109 (1995) (citing *State v. Bentley*, 218 Kan. 694, 695, 545 P.2d 183 [1976]).

Criminal defendants may also relinquish their right to counsel. Courts have recognized two ways in which a defendant may do so: by waiver or forfeiture. Although these terms are related and are often used interchangeably, they are unquestionably distinct. See *United States v. Olano*, 507 U.S. 725, 733, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993) ("Waiver is different from forfeiture."); *Freytag v. C.I.R.*, 501 U.S. 868, 895 n.2, 111 S. Ct. 2631, 115 L. Ed. 2d 764 (1991) (Scalia, J., concurring in part) ("[O]ur cases have so often used [the terms waiver and forfeiture] interchangeably that it may be too late to introduce precision."). As discussed below, these distinctions between waiver and forfeiture are especially significant in the context of the Sixth Amendment right to counsel.

1. *Waiver of the right to counsel*

A waiver is an intentional and voluntary relinquishment of a known right or privilege. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938);

17

see *Vreeland v. Zupan*, 906 F.3d 866, 876 (10th Cir. 2018) ("[W]hen we say a defendant has waived a particular right, we mean that the defendant has knowingly, voluntarily, and intentionally chosen to relinquish it."). Thus, the Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent. *Montejo v. Louisiana*, 556 U.S. 778, 786, 129 S. Ct. 2079, 173 L. Ed. 2d 955 (2009).

1.1 *Express waiver*

The most common method of waiving a right is by an affirmative written or verbal statement on the record. See *Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975) (To proceed pro se, "the accused must 'knowingly and intelligently' forgo" the benefits associated with the right to counsel and "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish . . . '[the accused's] choice is made with eyes open.'"); *State v. Youngblood*, 288 Kan. 659, Syl. ¶ 1, 206 P.3d 518 (2009) ("An accused's waiver of the right to counsel may not be presumed from a silent record."). While this court does not require the use of a specific checklist to decide whether a waiver of the right to counsel is knowing and intelligent, it has suggested a three-step framework to assist district courts in making this determination:

> "First, a court should advise the defendant of the right to counsel and to appointed counsel if indigent. Second, the defendant must possess the intelligence and capacity to appreciate the consequences of his or her decision. And third, the defendant must comprehend the charges and proceedings, punishments, and the facts necessary for a broad understanding of the case.
>
> "To assure the defendant appreciates the consequences of waiving representation by counsel . . . the court [should] explain that the defendant will be held to the same standards as an attorney; that the judge will not assist in or provide advice about presenting a defense; and that it is advisable to have an attorney because many trial

18

techniques, evidence rules, and the presentation of defenses require specialized training and knowledge. [Citation omitted.]" *State v. Burden*, 311 Kan. 859, 863-64, 467 P.3d 495 (2020).

### 1.2 *Waiver by conduct*

Along with an express waiver, a defendant may also implicitly waive the right to counsel through his or her conduct. See, e.g., *United States v. Hughes*, 191 F.3d 1317, 1323 (10th Cir. 1999) (recognizing waiver of right to counsel by conduct, "particularly when that conduct consists of tactics designed to delay the proceedings"); *United States v. Goldberg*, 67 F.3d 1092, 1100 (3d Cir. 1995) ("Once a defendant has been warned that he [or she] will lose his [or her] attorney if he [or she] engages in dilatory tactics, any misconduct thereafter may be treated as an implied request to proceed pro se and, thus, as a waiver of the right to counsel."); *State v. Buckland*, 245 Kan. 132, 138-39, 777 P.2d 745 (1989) (finding waiver of right to counsel where the defendant both refused appointed counsel and asserted he was not proceeding pro se or waiving his right to be represented by an attorney).

Notably, "[a] court is under no less obligation to ensure that [a] waiver is knowing and intelligent when voluntariness is deduced from conduct than when it is asserted expressly." *United States v. Allen*, 895 F.2d 1577, 1579 (10th Cir. 1990) (defendant's refusal to accept appointed counsel and failure to hire his own did not waive right to counsel where district court made no inquiry to determine whether waiver was knowing and intelligent); see *Hughes*, 191 F.3d at 1323-24 ("[A] waiver [by conduct] may be valid absent an inquiry by the court where 'the surrounding facts and circumstances, including [the defendant's] background and conduct, demonstrate that [the defendant] actually understood his [or her] right to counsel and the difficulties of pro se representation and knowingly and intelligently waived his [or her] right to counsel."); *Goldberg*, 67 F.3d at 1102-03 (no valid waiver by conduct where "the district court took no affirmative step to

ensure that Goldberg 'truly appreciate[d] the dangers and disadvantages of self-representation'"); *United States v. Bauer*, 956 F.2d 693, 695 (7th Cir. 1992) (finding waiver by conduct where the defendant was warned of the dangers of self-representation and could afford to hire an attorney but refused to do so); *United States v. Fazzini*, 871 F.2d 635, 641-42 (7th Cir. 1989) (defendant's failure to cooperate with his fourth appointed attorney waived his right to counsel where district court had warned his conduct would result in the defendant proceeding pro se); *United States v. Moore*, 706 F.2d 538, 540 (5th Cir. 1983) ("[A] persistent, unreasonable demand for dismissal of counsel and appointment of new counsel . . . is the functional equivalent of a knowing and voluntary waiver of counsel" where district court warned the defendant that failure to cooperate with his fourth attorney would signal a waiver of the right to counsel.); *Buckland*, 245 Kan. at 138-39 (knowing and intelligent waiver of right to counsel where district court repeatedly advised the defendant to obtain new counsel or have one appointed and emphasized that the defendant could not be represented by a nonlawyer; defendant's original attorney also warned the defendant it would be unwise to proceed without counsel); *State v. Landeo*, No. 118,156, 2019 WL 3518513, at *14-16 (Kan. App. 2019) (unpublished opinion) (invalid waiver of right to counsel by conduct where district court did not advise the defendant "about the requirements and perils of proceeding pro se" when it allowed counsel to withdraw and refused to appoint another attorney); *State v. Jones*, No. 118,846, 2019 WL 1087102, at *6 (Kan. App. 2019) (unpublished opinion) (Before ordering the defendant to proceed pro se based on waiver of right to counsel by conduct, the defendant must be "fully informed of his rights and the potential dangers of self-representation.").

Although the United States Supreme Court has not ruled directly on whether a defendant may implicitly waive the *right to counsel* at trial through his or her conduct, it has considered whether a defendant may implicitly waive the Sixth Amendment *right to be present* in the courtroom at trial through misconduct. The Court held that a defendant

20

could lose this right if, after being warned by the judge that the defendant will be removed if the disruptive behavior continues, the defendant nevertheless insists on behaving in a manner so disorderly, disruptive, and disrespectful of the court that the trial cannot be carried on with the defendant in the courtroom. *Illinois v. Allen*, 397 U.S. 337, 343, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970).

2. *Forfeiture of the right to counsel*

Whether a defendant can be held to have forfeited his or her right to counsel through misconduct appears to be an issue of first impression in Kansas. "Unlike waiver, which requires a knowing and intentional relinquishment of a known right, forfeiture results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right." *Goldberg*, 67 F.3d at 1100; see *Vreeland*, 906 F.3d at 876 ("When we say a defendant has forfeited a particular right, we mean that the defendant has lost the right through some action or inaction, but has done so under circumstances that preclude characterizing the loss as knowing, voluntary, and intentional.").

Courts have recognized that a defendant may in some cases forfeit the right to counsel where a defendant's actions "frustrate the purpose of the right to counsel itself and prevent the trial court from moving the case forward." *State v. Simpkins*, 373 N.C. 530, 536, 838 S.E.2d 439 (2020); see *United States v. Meeks*, 987 F.2d 575, 579 (9th Cir. 1993) ("'[A] court must be wary against the "right of counsel" being used as a ploy to gain time or effect delay.'"). A defendant may forfeit the right to counsel without warning by engaging in "severe misconduct or a course of disruption aimed at thwarting judicial proceedings." *State v. Hampton*, 208 Ariz. 241, 244, 92 P.3d 871 (2004); see *Goldberg*, 67 F.3d at 1102 (forfeiture of the right to legal representation requires "extremely serious misconduct"). When a district court finds that a defendant has forfeited his or her right to

21

counsel, the court need not determine whether the defendant knowingly and intelligently waived the right before requiring the defendant to proceed pro se.

Courts have held a defendant's aggressive, abusive, or threatening behavior, as well as conduct that was meant to obstruct legal proceedings, rises to the level of egregious misconduct warranting forfeiture of the right to counsel. See, e.g., *Leggett*, 162 F.3d at 240, 251 (defendant forfeited right to counsel at sentencing hearing by physically attacking counsel; defendant punched, choked, scratched, and spit on counsel); *Goldberg*, 67 F.3d at 1101 ("[B]ecause of the drastic nature of the sanction, forfeiture would appear to require extremely dilatory conduct."); *United States v. McLeod*, 53 F.3d 322, 325-26 (11th Cir. 1995) (defendant forfeited right to counsel at motion for new trial hearing by engaging in repeatedly abusive, threatening, and coercive behavior; defendant threatened to sue attorney and had attempted to persuade him to engage in unethical conduct); *United States v. Jennings*, 855 F. Supp. 1427, 1432-33, 1444-45 (M.D. Pa 1994), *aff'd* 61 F.3d 897 (3d Cir. 1995) (defendant forfeited right to counsel after he punched his attorney and later made threatening remarks against the prosecutor, corrections officers, and his former counsel; conduct was "extreme and outrageous"); *State v. Montgomery*, 138 N.C. App. 521, 524-25, 530 S.E.2d 66 (2000) (defendant forfeited constitutional right to counsel through purposeful conduct and tactics to delay orderly processes of the court, including disruptive and assaultive behavior).

Given the fundamental nature of the constitutional right at stake, however, only the most egregious and severe misbehavior will support a defendant's forfeiture of the right to counsel without warning and an opportunity to conform his or her conduct to an appropriate standard. See, e.g., *Gilchrist v. O'Keefe*, 260 F.3d 87, 100 (2d Cir. 2001) (encouraging trial courts to take intermediate steps to protect counsel, short of the complete denial of counsel; suggesting the defendant could be punished for misconduct by considering it in imposing sentence or by separately prosecuting the defendant for

22

misconduct); *State v. Holmes*, 302 S.W.3d 831, 848 (Tenn. 2010) (defendant did not forfeit his fundamental constitutional right to counsel following verbal threat and physical assault); *Commonwealth v. Means*, 454 Mass. 81, 92-95, 907 N.E.2d 646 (2009) ("Forfeiture is an extreme sanction in response to extreme conduct that imperils the integrity or safety of court proceedings" that should be used only under "extraordinary circumstances" as a "last resort in response to the most grave and deliberate misconduct."); *State v. Boykin*, 324 S.C. 552, 554, 558, 478 S.E.2d 689 (1996) (defendant's conduct in one instance of verbal abuse and physical threatening not severe enough to constitute forfeiture of right to counsel).

In *Means*, the Massachusetts Supreme Judicial Court reviewed state and federal court decisions and noted four considerations that generally govern whether forfeiture is appropriate: (1) it is typically applied "where a criminal defendant has had more than one appointed counsel, perhaps because in those circumstances the means of proceeding . . . have been exhausted or found futile"; (2) it is rarely applied to deny representation during trial and is more commonly invoked during pretrial or posttrial stages of a criminal proceeding; (3) it may be appropriate when a defendant commits or threatens to commit acts of violence; and (4) it "should be a last resort in response to the most grave and deliberate misconduct." 454 Mass. at 93-95.

Although we have never held as a matter of law that a criminal defendant in Kansas can forfeit the right to counsel through misconduct, we do so today. Specifically, a defendant may be found to have forfeited the right to counsel without warning or an opportunity to conform conduct to an appropriate standard upon a finding by the court that the defendant engaged in egregious misconduct or a course of disruption related to counsel with an intent to thwart judicial proceedings. In making this finding, the court must be mindful that forfeiture is an extreme sanction in response to extreme conduct that jeopardizes the integrity or safety of court proceedings and should be used only under

23

extraordinary circumstances as a last resort in response to the most serious and deliberate misconduct.

## 3. *Application to Trass*

To determine whether the district court violated Trass' Sixth Amendment right to counsel, we must first clarify whether this case involves waiver or forfeiture. Trass did not expressly waive his right to counsel, so he could only *implicitly* waive the right through conduct or by forfeiting the right. The district court used the terms interchangeably, stating Trass had either "waived" his right to counsel "by conduct" or "forfeited" his right to counsel.

### 3.1 *Waiver by conduct*

A review of the record reflects Trass did not implicitly waive his right to counsel based on his conduct. As discussed, waiver of counsel by conduct requires that a defendant first be warned about the consequences of his or her conduct, including the risks of proceeding pro se. See *Goldberg*, 67 F.3d at 1102-03 (no valid waiver by conduct where "the district court took no affirmative step to ensure that Goldberg 'truly appreciate[d] the dangers and disadvantages of self-representation'"); *Means*, 454 Mass. at 91 ("The key to waiver by conduct is misconduct occurring after an express warning has been given to the defendant about the defendant's behavior and the consequences of proceeding without counsel."). The district court did tell Trass that it was running out of attorneys to appoint and that his continued requests for new counsel could result in his appearance at trial without an attorney. But the court never advised Trass that any future misconduct would be treated as an implied waiver of counsel or warn him of the dangers of self-representation. See *Faretta*, 422 U.S. at 835 (A defendant should be made aware of the dangers and disadvantages of self-representation, so that the record will establish

the choice is made "'with eyes open.'"); *State v. Hughes*, 290 Kan. 159, 171, 224 P.3d 1149 (2010) ("It is not up to the defendant to know what 'fully advised' means. It is the judge who is burdened with assuring that [defendant's] rights have been adequately protected."). The court's failure to advise Trass about the disadvantages of self-representation—even after the State encouraged the court to hold a hearing to do so—precludes a finding that Trass knowingly, voluntarily, and intentionally chose to relinquish his right to counsel. See *Montejo*, 556 U.S. at 786 (The Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent.).

### 3.2 *Forfeiture*

Having determined Trass did not knowingly or voluntarily waive his right to counsel, we now must decide whether Trass engaged in misconduct so extreme and severe that it allowed the district court to permissibly conclude he forfeited his right to be represented by counsel without warning or an opportunity to conform his conduct to an appropriate standard. This decision requires us to balance Trass' constitutional right to counsel against the district court's legitimate interest in efficiently and judiciously managing its proceedings. In balancing these interests, we review the court's fact-findings for substantial competent evidence but review de novo its legal conclusion that those facts allowed the court to permissibly conclude Trass forfeited the right to counsel without warning and an opportunity to conform his conduct to an appropriate standard. See *Anderson*, 294 Kan. at 464; *Couch*, 317 Kan. at 575.

In deciding Trass forfeited his right to counsel, the district court appeared to find that Trass created conflicts of interest between himself and his appointed attorneys over the nearly four-year period from arraignment to trial, and that his actions in this regard amounted to egregious misconduct and a course of disruption intended to thwart judicial

25

proceedings. We disagree. In six of the seven instances when the court appointed a new attorney for Trass, the reasons for allowing counsel to withdraw appear both reasonable and legitimate: (1) counsel failed to communicate a plea offer and counsel had family issues preventing counsel from working on his case; (2) counsel had a conflict of interest with the State's witnesses; (3) counsel had a conflict because counsel was trying to evict Trass' mother and sister from their home and because a counsel told Trass she was very busy and had little time to discuss his case; (4) counsel had a conflict of interest based on his overarching worry that Trass would file an ineffective assistance of counsel claim against him; (5) counsel had a conflict of interest by his previous representation of an individual in an unrelated case who had been identified as a witness in Trass' case; and (6) counsel failed to return calls or contact Trass in the first two months after being appointed and counsel filed a competency motion without his knowledge. Simply put, we refuse to construe Trass' zealous representation of his own legal interests in seeking conflict-free and responsive counsel to advocate on his behalf as misconduct or disrespect of the legal system, let alone egregious misconduct or a course of disruption intended to thwart the judicial proceedings against him.

In the seventh instance, Hiebert and Centeno said Trass insisted they take meritless or unnecessary actions, communicated in a disrespectful and racially derogatory manner, and berated them for not doing exactly as he instructed. At a hearing on Hiebert and Centeno's motion, Trass was disruptive and had to be removed from the courtroom after he interrupted counsel and said that they were fired. Although the district court's desire to avoid any further postponement to the long-pending trial is understandable, Trass' conduct did not demonstrate the severe or egregious obstructive and dilatory behavior which would allow the court to permissibly conclude the defendant had forfeited the right to counsel. See *United States v. Welty*, 674 F.2d 185, 189 (3d Cir. 1982) ("While we can understand, and perhaps even sympathize, with the frustration and exasperation of the district court judge, even well-founded suspicions of intentional delay

26

and manipulative tactics can provide no substitute for the inquiries necessary to protect a defendant's constitutional rights."). Thus, we conclude the district court deprived Trass of his constitutional right to counsel during pretrial proceedings and during the nine-day trial.

Having determined the district court deprived Trass of his constitutional right to counsel, we turn to his claim of structural error requiring reversal of his conviction and remand for a new trial. "Structural errors are defects affecting the fundamental fairness of the trial's mechanism, preventing the trial court from serving its basic function of determining guilt or innocence and depriving defendants of basic due process protections required in criminal proceedings." *State v. Cantu*, 318 Kan. 759, Syl. ¶ 4, 547 P.3d 477 (2024). Structural errors defy harmless-error analysis because they "'affect[ ] the framework within which the trial proceeds.'" *Jones*, 290 Kan. at 382 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309-10, 111 S. Ct. 1246, 113 L. Ed. 2d 302 [1991]).

Violation of a Sixth Amendment right to counsel like we have found here is subject to structural error analysis. *Fulminante*, 499 U.S. at 309-10 (The entire trial is obviously impacted by the absence of counsel for a defendant, and so depriving a defendant of the right to counsel is a structural defect in the trial mechanism that defies analysis by harmless-error standards.); *Jones*, 290 Kan. at 382-83 (A violation of the Sixth Amendment right to counsel constitutes structural error; "[e]rrors are structural when they 'defy analysis by "harmless-error standards"' because they 'affect[] the framework within which the trial proceeds.'"). As a structural defect in the trial mechanism, the violation of Trass' Sixth Amendment right to counsel requires automatic reversal of his convictions. See *State v. Bentley*, 317 Kan. 222, 232, 526 P.3d 1060 (2023) (citing *Neder v. United States*, 527 U.S. 1, 8, 119 S. Ct. 1827, 144 L. Ed. 2d 35 [1999]).

27

Given remand for a new trial is required, we find it unnecessary to address the majority of Trass' remaining arguments on appeal. However, we do address Trass' speedy trial and sufficiency of the evidence claims because a resolution in his favor on either issue would affect the State's ability to retry him.

II. *Statutory right to a speedy trial*

Trass next alleges his statutory right to a speedy trial was violated because more than 150 days passed between his arraignment and his jury trial. See K.S.A. 22-3402(a). Although Trass alleged a constitutional speedy trial violation in his pro se brief, he provided no accompanying argument. As a result, Trass has waived any constitutional argument. See *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020) (A point raised incidentally in a brief and not argued therein is deemed waived or abandoned.).

A statutory speedy trial claim raises a question of law over which this court exercises unlimited review. *State v. Betts*, 316 Kan. 191, 197, 514 P.3d 341 (2022). When evaluating a speedy trial claim, any factual questions are reviewed for substantial competent evidence. This court exercises unlimited review over whether those facts as a matter of law support the district court's legal conclusion. *State v. Vaughn*, 288 Kan. 140, 143, 200 P.3d 446 (2009).

The speedy trial statute requires the State to bring a defendant to trial within 150 days of arraignment if the defendant is in custody. K.S.A. 22-3402(a). The State has the burden of meeting this time requirement, and the defendant does not have to assert the right. *State v. Queen*, 313 Kan. 12, 16, 48 P.3d 1117 (2021); see *State v. Thomas*, 291 Kan. 676, 695, 246 P.3d 678 (2011) (defendant need not take any affirmative steps to make sure he or she is tried within the speedy trial timeframe). If the State fails to bring the defendant to trial within the prescribed time, the defendant "is "entitled to be

discharged from further liability to be tried for the crime charged." K.S.A. 22-3402(a). Recognizing the realities of litigation, however, the statute makes an exception for delays that occur "as a result of the application or fault of the defendant." K.S.A. 22-3402(a).

Trass was arraigned on January 4, 2016. Trass' jury trial began on March 25, 2019. As explained above, Trass was represented by several different attorneys in the time between arraignment and trial. As a result, the trial had to be continued many times. Throughout the case, Trass filed motions raising speedy trial concerns and seeking dismissal on speedy trial grounds. The district court denied Trass' motion to dismiss after finding that 135 days had accrued on the speedy trial clock and that all other delays were attributed to Trass.

Although the parties' calculations differ from that of the district court, they agree that at least 133 days of the delay is properly charged to the State (January 4, 2016, to March 22, 2016, and October 18, 2016, to December 12, 2016). This discrepancy is irrelevant, however, given the analysis below finding no additional delay should be attributed to the State.

Trass contends the district court improperly counted the following four periods of time against him because he did not personally agree to these continuances. To place Trass' arguments in context, our analysis of each claim of error begins with a review of other facts relevant to the respective time.

*September 13, 2016, to October 18, 2016*

Trass personally appeared with defense counsel at a hearing on June 3, 2016. Counsel requested a continuance of the jury trial that was scheduled for June 14, 2016. The prosecutor agreed to the continuance "as long as the time is charged to the

29

defendant." When asked for suggestions about a new trial date, defense counsel said he wanted to confer with the lead attorney in the case and agreed to report to the court the next week. The judge then spoke directly to Trass, stating, "[Y]our counsel will let you know the new date, but it is continued. Trial is continued from June 14." The record reflects no response from Trass.

The record does not explain how a new trial date was settled on. On June 15, 2016, the register of actions listed a trial date of September 13, 2016. That same day, the register of actions also listed October 18, 2016, as a "[n]ew trial date agreed to." Trass argues that the delay from September 13, 2016, to October 18, 2016, should not be applied to him because there was no continuance hearing held at which he could have personally objected to any delay beyond September 13, 2016.

This argument lacks merit. At the June 3rd hearing, Trass raised no objection when the district court said that the trial would be continued, and that counsel would advise him of the new trial date. And the prosecutor's comments at the hearing made clear that whatever delay was caused by the continuance would be charged to Trass. Nothing in the record shows that the trial date change from September 13, 2016, occurred because of any new request for a continuance. Thus, the court was not required to hold another hearing or otherwise obtain Trass' personal agreement before setting the October 18, 2016 trial date. Because this delay arose from defense counsel's request for a continuance, the time was properly charged to Trass.

*February 13, 2017, to February 21, 2017*

Trass personally appeared with defense counsel at a hearing on November 23, 2016. Because of family circumstances, counsel requested a continuance of the jury trial

30

that was scheduled for December 12, 2016. The district court spoke to Trass directly about the continuance:

> "THE COURT: . . . I'm sure you'd like to get your case tried but I need to know that you are accepting that continuance.
>
> "THE DEFENDANT: Yes. The only issue I just want to make sure that, I mean, we still get a date set. Maybe early next year, something. February or March. I don't know. I don't want it to be, you know, status, status into late next year. I'd just like some dates set, so we can also keep track of my speedy trial right.
>
> "THE COURT: Now, because you mentioned that the time between December 12 and whenever I set it doesn't get charged against the State.
>
> "THE DEFENDANT: Yes, ma'am."

After confirming Trass' acknowledgment that "the time won't count . . . against the State," the district court granted counsel's request for a continuance and rescheduled the trial for February 13, 2017.

The district attorney, who did not attend this hearing, later notified the district court via email that he was unavailable the week of February 13th and requested that the trial be rescheduled for the next week. He asked that the rescheduling "be considered as pursuant to the defendant's prior request for continuance." Defense counsel responded via email, "No objection." The court then rescheduled the trial for February 21, 2017.

Trass argues this time should not count against him for the same reason discussed above—there was no hearing where he could personally agree or object to any additional delay beyond February 13, 2017.

31

Like his previous allegation, Trass' claim of error here is unfounded. Trass was personally present at the hearing where he agreed to a trial continuance. He also agreed "that the time between December 12 and *whenever* [*the court*] *set*[*s*] *it doesn't get charged against the State*." (Emphasis added.) The district court's rescheduling of the trial date from February 13th to February 21st to accommodate the district attorney's schedule did not constitute a continuance that required Trass' approval. Because this delay arose from defense counsel's request for a continuance, the time was properly charged to Trass.

*February 21, 2017, to September 25, 2017*

On February 21, 2017, Trass filed a pro se motion for new counsel based on several complaints that his attorney, Christine Jones, was ineffective. At a hearing on February 24, 2017, the district court granted the motion, appointed Steve Osburn to represent Trass, and continued the trial to May 1, 2017.

Soon after, Osburn moved to withdraw due to a conflict. At a hearing on April 4, 2017, the district court granted the motion and appointed Shannon Crane to represent Trass. At the hearing, the parties discussed the speedy trial clock and Osburn noted that "we are still within speedy trial in the case."

At a hearing on April 7, 2017, Crane appeared for a status hearing where she advised the district court that she had no conflicts and could accept the appointment. Trass did not appear at the hearing. Because of the extensive discovery, Crane said she could not be ready for the May 1st trial. The court agreed a continuance was warranted and scheduled a hearing where a new trial date could be set in Trass' presence. The parties again discussed that the case was still within the speedy trial window.

32

Trass appeared at a hearing on April 14, 2017, where the parties verified that Crane had no conflicts that would prevent her from representing Trass. Crane again advised the district court that she could not be ready for trial on May 1st, and the prosecutor agreed Crane could not effectively prepare for a trial by then. The court granted the request for a continuance but did not schedule a new date at that time. At the end of the hearing, the court declined Trass' request to personally address the court.

On April 28, 2017, Trass appeared with Crane at a status hearing, and the district court scheduled the trial for September 25, 2017.

Trass claims the district court improperly attributed this entire delay to him because (1) he was never advised that asking for new counsel would impact his speedy trial rights, (2) counsel asked for a continuance outside his presence, and (3) he was not allowed to personally speak to the court about the continuance.

Contrary to Trass' arguments, a reasonable delay caused by a change in defense counsel is properly chargeable to the defendant and does not count against the speedy trial deadline. *State v. Timley*, 255 Kan. 286, 293-96, 875 P.2d 242 (1994) (finding no violation of the defendant's speedy trial rights based on continuances granted due to repeated change in appointed counsel), *disapproved on other grounds by State v. Nunez*, 298 Kan. 661, 316 P.3d 717 (2014), and *State v. Brooks*, 298 Kan. 672, 317 P.3d 54 (2014); *State v. Lawrence*, 38 Kan. App. 2d 473, 479, 167 P.3d 794 (2007) (relying on *Timley* to find no violation of the defendant's speedy trial rights based on delay so the defendant could obtain a new attorney).

The entire delay from February 21, 2017, to September 25, 2017, resulted from Trass' request for new counsel. The district court granted this request and appointed Osburn to represent Trass. Osburn later withdrew due to a conflict. Next, the court

33

appointed Crane, who requested a continuance to have adequate time to prepare for trial. Although Trass did not personally request or approve these continuances, they were still granted for his benefit. See *Timley*, 255 Kan. at 296 ("The ethical rule prohibiting an attorney from representing a client when there is a conflict of interest is for the benefit of the client. A continuance to allow newly appointed counsel adequate time to prepare for trial is also for the benefit of the defendant."). As a result, this time was properly charged to Trass.

*July 23, 2018, to November 5, 2018*

On June 4, 2018, Kevin Loeffler and Michael Llamas moved to withdraw from representation, citing an inability to effectively communicate with Trass based on his belief that they were conspiring with the State against him. At a hearing on the motion, the prosecutor pointed out Trass' "pattern of conduct" in creating conflict with his attorneys but agreed that counsel should be allowed to withdraw. The prosecutor noted it would be impossible for a new attorney to be ready for the jury trial scheduled for July 23, 2018. The district court later granted counsel's motion to withdraw.

The district court next appointed Bobby Hiebert and Monique Centeno to represent Trass. They moved to continue the July 23, 2018 trial. At a hearing on the motion, Hiebert said he had not yet spoken with Trass, who had objected to the requested continuance, and noted it would be extremely difficult to try the case as scheduled. Following discussion with the parties about the complicated nature of the case and speedy trial considerations, the district court judge continued the trial to November 5, 2018, stating, "I can't in good conscience ask an attorney that I've appointed within the last month to prepare for a murder trial within 17 days." The court charged the time from July 23 to November 5 to Trass because it was "necessitated by [his] request to fire his attorney." When Trass objected that the time was charged to him, the court told Trass to

sit down and be quiet. The prosecutor then clarified that Trass had not requested the removal of his previous counsel; counsel had asked to withdraw due to their inability to communicate with Trass.

Based on his objection to counsel's requested continuance, Trass claims the district court erred in counting the time from July 23, 2018, to November 5, 2018, against him. Trass' argument fails for the same reason as his previous one. A reasonable delay caused by a change in defense counsel—even if not initiated by the defendant—is properly chargeable to the defendant and does not count against the speedy trial deadline. See *Timley*, 255 Kan. at 293-96. The continuance under these circumstances was done solely for Trass' benefit and was thus properly charged to him.

*Conclusion*

Substantial competent evidence supports the district court's decision to attribute the four periods of time referenced above to Trass for speedy trial purposes. Because Trass was brought to trial within the 150-day statutory window, his speedy trial argument necessarily fails.

III. *Sufficient evidence*

Trass challenges the sufficiency of the evidence supporting his felony-murder conviction, alleging the State did not establish that the killing occurred within the res gestae of the underlying felony drug possession. In other words, Trass claims the State failed to prove he committed the crime of murder while possessing methamphetamine because the evidence established that he did not take control of the methamphetamine until after the shooting.

35

When reviewing the sufficiency of the evidence to support a conviction, we review the evidence in the light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. In doing so, we do not reweigh evidence, resolve evidentiary conflicts, or reassess witness credibility. *State v. Spencer*, 317 Kan. 295, 302, 527 P.3d 921 (2023).

Felony murder is statutorily defined as the killing of a human being "in the commission of, attempt to commit, or flight from any inherently dangerous felony." K.S.A. 21-5402(a)(2). The State charged Trass with felony murder based, in relevant part, on a killing that happened "during the commission of or attempt to commit" unlawful possession of methamphetamine. Possession of methamphetamine is expressly designated in the statute as an inherently dangerous felony. See K.S.A. 21-5402(c)(1)(N); K.S.A. 21-5706(a); K.S.A. 65-4107(d)(3). Consistent with the statutory definition, the district court instructed the jury that to find Trass guilty of felony murder, the State had to prove that Trass killed Morales and that "[t]he killing was done while Brennan Trass was committing possession of a controlled substance, to wit:  methamphetamine."

Trass' argument challenges the State's proof of causation. "'The felony-murder statute requires two elements of causation. First, the death must occur within the res gestae of the underlying felony. Second, there must be a direct causal connection between the felony and the homicide.'" *State v. Pearce*, 314 Kan. 475, 480, 500 P.3d 528 (2021) (quoting *State v. Phillips*, 295 Kan. 929, 940, 287 P.3d 245 [2012]). Trass focuses solely on the first causation element and presents no argument on the second. See *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021) (An issue not briefed is deemed waived or abandoned.).

The res gestae of a crime includes the acts committed "'before, during, or after the happening of the principal occurrence when those acts are so closely connected with the

36

principal occurrence as to form, in reality, a part of the occurrence.'" *Pearce*, 314 Kan. at 480. "Deaths 'caused within the time and circumstances' of an underlying felony's res gestae qualify as felony murders." *State v. Nesbitt*, 308 Kan. 45, 51-52, 417 P.3d 1058 (2018).

As support for his assertion that Morales' death did not occur within the res gestae of methamphetamine possession, Trass points to evidence in the record that he did not take possession of the methamphetamine until after he shot Morales.

Contrary to Trass' argument, the underlying felony and the victim's death need not occur simultaneously. "[T]he death need not occur during or after the commission of the felony to support a conviction for felony murder. The question for the jury is whether the death is within the res gestae of the crime, regardless of the actual sequence of events." *State v. Jacques*, 270 Kan. 173, 189-90, 14 P.3d 409 (2000), *abrogated on other grounds by State v. Milo*, 315 Kan. 434, 510 P.3d 1 (2022). As this court clarified:

> "'Under the felony-murder rule, the killing may precede, coincide with, or follow the felony and still be considered as occurring in the perpetration of the felony offense, as long as there is a connection in time, place, and continuity of action. As long as the underlying felony and the killing are part of one continuous transaction, it is irrelevant for purposes of felony murder whether the felony took place before, after, or during the killing. In a felony murder, the killing need not occur in the midst of the commission of the felony, as long as that felony is not merely incidental to, or an afterthought to, the killing.'" *Nesbitt*, 308 Kan. at 52 (quoting 40 Am. Jur. 2d, Homicide § 68).

Whether the underlying felony has been abandoned or completed to remove it from the ambit of the felony-murder rule is ordinarily a question of fact for the jury to decide. *State v. Beach*, 275 Kan. 603, 610, 67 P.3d 121 (2003).

Thus, to determine whether Trass "was committing" possession of methamphetamine when he shot Morales, "the jury could consider the moments immediately preceding the shooting, the moment of the shooting, and the moments immediately after the shooting." See *State v. Dupree*, 304 Kan. 377, 389-90, 373 P.3d 811 (2016). It does not matter whether Morales was shot before or after Trass possessed the methamphetamine because the instruction permitted the jury to consider all the acts together as it determined whether a killing occurred while Trass "was committing" possession of methamphetamine. Even if the jury accepted Trass' testimony that he took the methamphetamine after he shot Morales and was leaving the scene, his act of taking the methamphetamine was so closely related to the killing that it was part of the same occurrence, given the proximity in time and the undisputed evidence that Morales and Trass were engaged in a drug transaction at the time of the killing. See *State v. Jackson*, 280 Kan. 541, 546, 124 P.3d 460 (2005) (affirming jury's conclusion that a murder occurred "during" a drug transaction when transaction "had not been completed but was still in process"); *Dupree*, 304 Kan. at 390-91 (struggle with victim at door to residence, shot that killed victim, and entry into residence happened so close together that they were all part of the same occurrence and within the res gestae of aggravated burglary); *Jacques*, 270 Kan. at 189-90 (attempt by victim to buy cocaine, the stabbing of victim, and the later purchase of the cocaine by the defendant constituted one continuous transaction).

Given the proximity in time and relation between the drug transaction and the killing, Trass' taking of the methamphetamine was part of the same occurrence as the killing and occurred within the res gestae of the felony possession crime. As a result, the evidence is sufficient to support the jury's finding that Trass killed Morales while possessing methamphetamine.

38

The district court violated Trass' right to counsel under the Sixth Amendment to the United States Constitution. Because this violation constitutes structural error affecting the trial mechanism, we reverse his convictions for first-degree felony murder and criminal possession of a firearm and remand for a new trial before a different judge.

Reversed and remanded with directions.

LUCKERT, C.J., not participating.