IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 110,214

STATE OF KANSAS,
*Appellee*,

v.

RANDALL A. MURRAY,
*Appellant*.

SYLLABUS BY THE COURT

1.

Under our holding in *State v. Murray*, 293 Kan. 1051, 271 P.3d 739 (2012), if a district court violates K.S.A. 22-3302 by proceeding with a criminal case even though a competency evaluation was ordered but the defendant's competency never judicially determined, a meaningful retrospective competency hearing can rectify the procedural error.

2.

To determine whether a retrospective competency hearing is feasible, the district court should consider (1) the passage of time, (2) the availability of contemporaneous medical evidence, including medical records and prior competency determinations, (3) any statements by the defendant in the trial record, and (4) the availability of individuals who were in a position to interact with defendant before and during trial, including the trial judge, counsel for both the State and defendant, jail officials, and expert and nonexpert trial witnesses.

3.

Appellate courts apply an abuse of discretion standard when reviewing a district court's determination of whether a retrospective competency hearing is feasible. A judicial decision amounts to an abuse of discretion when a decision is (1) arbitrary, fanciful, or unreasonable, (2) based on an error of law, or (3) based on an error of fact.

Appeal from Wyandotte District Court; R. WAYNE LAMPSON, judge. Opinion filed July 31, 2015. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, argued the cause and was on the brief for appellant.

*Jerome A. Gorman*, district attorney, argued the cause, and *Derek Schmidt*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.:  In *State v. Murray*, 293 Kan. 1051, 271 P.3d 739 (2012) (*Murray I*), we remanded this case for a determination of Randall A. Murray's motion to correct an illegal sentence. In his motion, he argued the district court lacked jurisdiction to convict him because it failed to suspend proceedings after ordering a competency examination in the underlying criminal case. On remand, the district court determined:  (1) a competency hearing had not been conducted; (2) a retrospective competency hearing was feasible; and (3) Murray had been competent when tried and convicted. Murray now argues the district court on remand exceeded this court's mandate and, alternatively, that the district court erred in determining the retrospective competency hearing was feasible.

2

FACTS AND PROCEDURAL HISTORY

The State charged Murray in February 1983 with felony murder and aggravated robbery for holding up a gas station and shooting the cashier. Prior to trial, Murray filed a motion to determine competency. Under K.S.A. 22-3302(1), proceedings "shall be suspended and a hearing conducted to determine the competency of the defendant" when "the judge before whom the case is pending finds that there is reason to believe that the defendant is incompetent to stand trial." The district court found "good cause" to grant Murray's motion the same day it was filed, and the court ordered Dr. William Reese to examine Murray. But in Murray's case, while Dr. Reese performed a competency evaluation, the record does not reflect that the district court conducted the statutorily mandated competency hearing. Nevertheless, the case proceeded to trial where a jury convicted Murray on May 25, 1983, of felony murder and aggravated robbery. Murray received a life sentence for murder and a consecutive sentence of 15 years to life for aggravated robbery.

After an unsuccessful direct appeal and a number of unsuccessful collateral challenges, Murray filed a motion to correct an illegal sentence in 2009. He argued the district court's failure to conduct a competency hearing deprived it of jurisdiction to convict and sentence him. The district court summarily dismissed his motion, and Murray appealed to this court.

On appeal, this court held a district court loses jurisdiction if it proceeds without a competency evaluation and hearing when statutorily mandated. *Murray I*, 293 Kan. at

3

1054; see *State v. Davis*, 281 Kan. 169, 180, 130 P.3d 69 (2006). Since Murray alleged that was what occurred in his case, this court remanded

> "to determine whether his factual assertion that he never received a competency hearing is accurate. Significantly, the State has not argued otherwise so far. On remand, in order to effectively contest Murray's assertion (and presumably his willingness to take the stand and swear that his assertion is the truth), the State must come forward with evidence to fill in the gaps in the reconstructed record to show that a competency hearing occurred. If the district court determines that Murray did not, in fact, receive a competency hearing under K.S.A. 22-3302(1), then the statute and our holding in *Davis* will compel it to grant relief." *Murray I*, 293 Kan. at 1055.

On remand, the district court conducted an evidentiary hearing. The hearing included the testimony of Dr. Reese, the prosecutor, Murray's attorney, and Murray.

Dr. Reese indicated he had no memory of his examination of Murray, so he had little to add beyond his report. He read his report to the court into the record:

> "[O]n March 28, . . . 1983, I concluded my initial evaluation appraisal of Randall Murray. It is my observation that Randall Murray does not warrant further evaluation. I am satisfied he is competent to stand trial. I'm aware he has certain emotional liabilities; however, he sufficiently understands and comprehends the charges against him . . . , the need to communicate with his attorney . . . , and the consequences of his behavior . . . . I do not recommend further evaluation at this time . . . . [I]f I can be of further assistance, please don't hesitate to contact me."

The Wyandotte County Assistant District Attorney who prosecuted Murray also indicated he could not specifically remember Murray's proceedings. Based on his files

4

and the court record, he testified that he had agreed to the district court's order to determine competency and that he had received Dr. Reese's evaluation. He also testified that the preliminary hearing had been originally scheduled for March 15, 1983, but was continued to allow time for Dr. Reese's evaluation. Murray's preliminary hearing occurred on March 29, 1983, which was the day after receipt of Dr. Reese's evaluation. The attorney testified, however, that there was no competency hearing as required by K.S.A. 22-3302(1); if it had occurred, he believed the docket sheet or other notes in the record would have reflected it.

Carl Cornwell, Murray's defense attorney, also testified that he could not remember many details of Murray's case. He recognized his motion to determine competency, and he testified that he must have observed something leading him to question whether Murray was "hitting on all cylinders." While he found no evidence of a competency hearing in the record, he conceded that he had received Dr. Reese's report and apparently chose not to challenge it. Cornwell also testified he allowed the preliminary hearing to proceed the next day without seeking a second continuance and also counseled Murray through a plea in a parallel case—circumstances he would not have allowed if he had any concern about Murray's competence.

Murray testified that he remembered Dr. Reese's interview, which he estimated lasted only 5 or 15 minutes. Murray explained that he felt he had some "psychological problems" when he was younger. He also believed he had suffered a head injury the day before his arrest; he indicated this had caused him to lose his memory from one minute to the next. Further, he reported that he felt Cornwell was "out to get [him]."

After arguments from counsel, the district court took Murray's motion to correct an illegal sentence under advisement and later issued a written order. The district court first found no evidence that Murray had received a competency hearing as required by K.S.A. 22-3302(1). Nevertheless, the district court concluded that it was feasible to retrospectively determine Murray's competence given the availability of contemporaneous medical evidence and the testimony of the witnesses. Finally, the district court found that Murray was competent to stand trial in 1983. The district court denied Murray's motion to correct an illegal sentence.

Murray timely appealed the denial to this court, and we have jurisdiction under K.S.A. 2014 Supp. 22-3601(b)(3) (permitting direct appeal to supreme court when life imprisonment imposed).

## ANALYSIS

Before discussing the issues raised by Murray, we must discuss the procedural mechanism for Murray's claim—a motion to correct an illegal sentence—in light of our holding in *State v. Ford*, ___ Kan. ___, ___P.3d ___ (No, 109,806, this day decided). Ford, like Murray, alleged the district court lacked jurisdiction to convict him because he had been convicted without compliance with K.S.A. 22-3302. Both Ford and Murray relied on *Davis*, 281 Kan. at 174-75, in which this court allowed a motion to correct an illegal sentence to serve as the potential vehicle for reversing a conviction entered after a district court failed to follow the requirements of K.S.A. 22-3302. Ford also relied on *Murray I*, which followed *Davis* and recognized the appropriateness of using a motion to correct an illegal sentence in Murray's case.

6

Today, however, in *Ford* we have disapproved that part of the *Davis* and *Murray I* decisions that hold a failure to comply with K.S.A. 22-3302 is jurisdictional—which forecloses a motion to correct an illegal sentence as a mechanism for correcting a procedural competency error. *Ford*, ___ Kan. ___, slip op. at 16. Nevertheless, in *Murray I*, we validated Murray's use of a motion to correct an illegal sentence; that holding is the law of his case, and the parties have not asked us to reexamine that holding. See *State v. Collier*, 263 Kan. 629, 631, 952 P.2d 1326 (1998) (discussing law of the case doctrine). Therefore, we will consider the merits of his appeal.

To put the merits discussion in perspective, we again note that in *Murray I* we held that Murray had satisfied his initial burden of establishing, from the record or other evidence, that there was reason to believe he was incompetent to stand trial and that the requirements of K.S.A. 22-3302 had not been satisfied. Meeting this initial burden entitled Murray to a hearing on his motion, so we remanded his case to the district court for further proceedings. We stated that on remand the burden would shift to the State to prove compliance with K.S.A. 22-3302. If the State failed to establish compliance with K.S.A. 22-3302, then Murray's procedural due process rights were violated "and our holding in *Davis* will compel [the district court] to grant relief." *Murray I*, 293 Kan. at 1055; see *Ford*, __Kan. at __, slip op. at 21.

After the evidentiary hearing conducted on remand from *Murray I*, the district court determined the State had not established compliance with K.S.A. 22-3302. Murray, of course, agrees. The State suggests that an alternative way for us to affirm the district court—a right-for-the-wrong-reason sort of approach—is to conclude circumstantial evidence suggests a hearing did occur. As discussed in *Ford*, the district court's determination that the State had not met its burden was a negative finding. "When

7

reviewing a negative finding—a finding that a party failed to meet its burden—appellate courts consider whether a district court arbitrarily disregarded undisputed evidence or relied upon an extrinsic consideration such as bias, passion, or prejudice." *Ford*, ___ Kan. at ___, slip op. at 18-19.

Here, the State points to evidence that might have led the district court to a different result. Further, the State argues the attorneys in Murray's case believed they would not have proceeded without a hearing, so a hearing must have occurred. Contrary to this assertion, the prosecutor testified, "There wasn't any hearing." Similarly, Cornwell testified that he would like to think that Murray received a hearing, but he just did not know. The record in this case was not clear, and neither party could remember the hearing. Even if the district court could have made a different finding, it did not ignore undisputed evidence or base its decision on extrinsic considerations in finding that the State failed in its burden to prove Murray received a competency hearing.

Because Murray's motion now proceeds with a finding that he did not receive a competency hearing, his allegation that his rights under K.S.A. 22-3302 were violated is substantiated. Nevertheless, in *Davis*, 281 Kan. at 181, we held that "under certain circumstances the State may rectify the error by a retrospective competency hearing." The first step in analyzing whether a particular case is one of the "certain circumstances" requires a determination as to whether a retrospective competency hearing is feasible— *i.e.*, whether the available evidence is such that a retrospective hearing could be meaningful. See *Ford*, __ Kan. at ___, slip op. at 21. On remand in this case, the district court undertook an evaluation of feasibility and determined a hearing was feasible.

8

On appeal, Murray focuses his arguments on this step of the proceedings. He argues first that the district court on remand exceeded the mandate in *Murray I* when it undertook a feasibility examination. Second, he makes an alternative argument that the district court erred in determining the retrospective competency hearing was feasible.

ISSUE 1. *The district court did not exceed the* Murray I *mandate*.

In Murray's first argument he focuses on the last sentence of our *Murray I* decision, which stated: "If the district court determines that Murray did not, in fact, receive a competency hearing under K.S.A. 22-3302(1), then the statute and our holding in *Davis* will compel it to grant relief." 293 Kan. at 1055. Murray suggests the only remedy available in the absence of a contemporaneous competency hearing under K.S.A. 22-3302 is the reversal of his conviction.

Murray's reading removes the incorporation of *Davis* into the *Murray I* holding. As we have noted, *Davis* specifically discussed the "relief" available in the face of a failure to comply with K.S.A. 22-3302 and noted that in certain circumstances the road to relief includes a retrospective competency hearing. 281 Kan. at 181. Our opinion in *Murray I* does not modify *Davis* or limit its application. Consequently, the district court's pursuit of the remedies discussed in *Davis* fit within this court's mandate in *Murray I*.

ISSUE 2. *A retrospective competency hearing was feasible*.

In *Davis*, we explained that upon the State's request and in the face of a procedural violation of K.S.A. 22-3302, the district court could determine if a meaningful retrospective competency hearing was feasible. *Davis*, 281 Kan. at 180-81; see *Ford*, ___

9

Kan. at ___, slip op. at 21. Relying on *McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001), the *Davis* court directed district courts to consider the following factors when determining this feasibility:

> "'(1) [T]he passage of time, (2) the availability of contemporaneous medical evidence, including medical records and prior competency determinations, (3) any statements by the defendant in the trial record, and (4) the availability of individuals and trial witnesses, both experts and non-experts, who were in a position to interact with defendant before and during trial . . . ." *Davis*, 281 Kan. at 181 (citing *McGregor*, 248 F.3d at 962-63).

On review of a district court's application of those factors in *Ford*, today we held an appellate court will review the district court's conclusion regarding those factors for an abuse of discretion. See *Ford*, __ Kan. at __, slip op. at 22-23 (citing *Hooker v. United States*, 70 A.3d 1197, 1202-03 [D.C. 2013]; *State v. Blancher*, 170 N.C. App. 171, 174, 611 S.E.2d 445 [2005]). An abuse of discretion occurs when a judicial action is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014). Although not citing a standard of review, Murray argues the district court erred in applying these factors. We disagree.

### 2.1 *First* McGregor *factor—passage of time*

The first *McGregor* factor—passage of time—weighs in Murray's favor. Almost 30 years passed between the order to determine Murray's competency and the time of his retrospective determination. Certainly, a lengthy passage of time makes retrospective

10

determinations inherently difficult, as competency is subject to change and witnesses' memories fade.

2.2 *Second* McGregor *factor—contemporaneous medical evidence*

As the second *McGregor* factor recognizes, the availability of contemporaneous medical evidence can significantly diminish the problems that arise over time. *Ford*, ___ Kan. at ___, slip op. at 23; *Davis*, 281 Kan. at 182-83; *Maxwell v. Roe*, 606 F.3d 561, 576-77 (9th Cir. 2010); *McGregor*, 248 F.3d at 963. And here, the State presented the district court with Dr. Reese's March 1983 evaluation of Murray. Dr. Reese concluded that Murray "does not warrant further evaluation. . . . [H]e is competent to stand trial." That contemporaneous finding carries significant weight. See *Davis*, 281 Kan. at 182.

In an attempt to minimize the exam's value on appeal, Murray challenges the brevity of Dr. Reese's report. But as the Tenth Circuit Court of Appeals concluded under similar circumstances, "[a]lthough the report was admittedly brief, it nonetheless constituted a contemporaneous medical determination." *Clayton v. Gibson*, 199 F.3d 1162, 1169 (10th Cir. 1999). Indeed, Dr. Reese's brevity suggests there was nothing to discuss—he had no concerns about Murray's competence. *Cf. McGregor*, 248 F.3d at 955 (McGregor had a substantial history of mental illness, was not properly medicated throughout his trial, exhibited odd behaviors at trial, and his counsel made "repeated and vehement contentions that his client was unable to assist in his own defense.").

For a number of other reasons, Murray asserts that Dr. Reese's report was not meaningful. First, Murray claims it was just an "'initial report,'" which suggested that

further evaluation was meant to occur. But Dr. Reese's evaluation expressly states, "I do not recommend further evaluation at this time."

Second, Murray claims the evaluation is suspect because Dr. Reese did not specifically describe what test he used, and he did not expressly state that Murray was able "to make or assist in making his defense." K.S.A. 22-3301(1)(b) (defining "incompetent to stand trial" to mean being unable to [1] "understand the nature and purpose of the proceedings against him," or [2] "make or assist in making his defense"). Yet Murray cites nothing to support his assertion that a mental evaluation is not valid unless it is keyed to the language of the statute and describes what tests were used. The failure to support a point with authority amounts to an abandonment of the issue. *State v. Tague*, 296 Kan. 993, 1001, 298 P.3d 273 (2013).

Moreover, even when a district court finds reason to believe a defendant is incompetent, the ordering of an expert psychological examination under K.S.A. 22-3302(3) is a discretionary decision—meaning the court can determine competence without any expert evaluation. ("The court *may* order a psychiatric or psychological examination of the defendant.") (Emphasis added.) Hence, we disagree with Murray's technical claim about the necessary contents of an expert evaluation because an expert evaluation is not statutorily mandated. We find no fault in the district court's conclusion that Dr. Reese's expert evaluation of Murray was meaningful, contemporaneous medical evidence of Murray's competence in the retrospective hearing. Finally, there is no evidence to counter Dr. Reese's conclusion.

## 2.3 *Third* McGregor *factor—Murray's statements in trial record*

Regarding the third *McGregor* factor—statements by Murray in the trial record—the district court had access to the transcript of Murray's pretrial and trial testimony. See *Davis*, 281 Kan. at 181-82 (considering defendant's own statements on the record). Murray testified at both his suppression hearing and in his defense at trial.

The suppression hearing arose from Murray's attempt to suppress his shoes, which investigators had linked to a shoe print left at the scene. At the hearing, Murray testified about specific prison officials who took his shoes despite his refusal to consent. His testimony reflects that he understood the purpose of the proceeding and the law upon which the court's decision depended and that he testified accordingly.

Also supporting the district court's finding that the record reflected Murray's competence were other steps Murray took prior to trial, testimony he gave at trial, and his actions in a parallel proceeding. Specifically, prior to trial, Murray learned his friend had confessed to the crime. In response, Murray sent a letter to the friend advising him to exercise his constitutional right to silence and encouraging him to try and get his confession suppressed. Murray understood the evidence against him, and he actively attempted to assist in his defense. Further, at trial, Murray provided a detailed timeline of the events of the day of the crime. He testified that he was never at the gas station on February 17, 1983. Finally, as part of a plea in a parallel case, Murray certified that he had never been confined in a mental institution nor judged mentally incompetent. Nothing in the record indicates that Murray did not understand the proceedings or that a mental disease or defect rendered him mentally incapable of assisting in his defense under K.S.A. 22-3301.

13

Murray points on appeal to a witness at trial who testified that people said Murray was "crazy." Cornwell objected at trial, but he decided not to seek clarification of the remark through cross-examination. The district court noted, "Crazy means a lot of things. Seldom does it mean insane." The court then admonished the jury to disregard the statement. As the trial court contemporaneously noted, the witness' remark, which could mean just about anything, does not call Murray's competence into question.

In short, Murray does not point to anything he said or did that raises the sort of competency question a retrospective hearing could not answer. He seems to concede this point, claiming on appeal that his trial testimony "was unremarkable as to having relevance [on the competency] issue." This factor weighs in the State's favor.

2.4 *Fourth* McGregor *factor—availability of those who interacted with Murray*

Finally, as to the last *McGregor* factor—the availability of individuals who were in a position to interact with Murray before and during his trial—the district court heard the testimony of Cornwell (Murray's defense counsel), Murray's prosecutor, and Murray. See *State v. Davis*, 281 Kan. 169, 181-82, 130 P.3d 69 (2006) (considering the opinions of witnesses that interacted with defendant); *McGregor*, 248 F.3d at 960 (quoting *Bryson v. Ward*, 187 F.3d 1193, 1201 [10th Cir. 1999]) ("'Defense counsel is often in the best position to determine whether a defendant's competency is questionable.'").

While Cornwell said he must have felt Murray was not "hitting on all cylinders" when he initially requested the evaluation, he also testified he would not have proceeded in this case or assisted Murray in entering a plea in a parallel case if he had ongoing

14

concerns about Murray's competency. Cornwell's testimony also suggests that he had no concerns about Murray's competence and considered the issue resolved after Dr. Reese's evaluation. Concededly, he never contested Dr. Reese's evaluation of Murray.

And it was not that he let the competency issue fall through the cracks—in a pretrial report Cornwell indicated that insanity might be a possible defense. Cornwell apparently made the decision not to pursue that defense. Moreover, after Murray's conviction, Cornwell sought another mental evaluation in the hopes that he could present some mitigating circumstances that would land Murray in a care and treatment facility rather than prison. Cornwell did not often make that sort of posttrial motion for an evaluation. He only filed such a motion when there arguably might be mitigating emotional issues but no competency issues sufficient to support an insanity defense or the suspension of trial.

The prosecutor testified similarly. He never had a concern about Murray's competency, and he considered the matter resolved after receiving Dr. Reese's evaluation.

Even Murray did not testify during the 2013 hearing that he had been incompetent to stand trial. He mentioned that he thought he had some "psychological problems" that arose before his arrest. Putting aside that his perceived "psychological problems" might not amount to a "mental illness or defect" implicating his competence under K.S.A. 22-3301, Murray's testimony mostly focused on his mental state at the time of his crime. ("I'm saying that at that time I was having some mental—I had had some head injuries the day before I was arrested. And I had had some other trauma involved in some pretty serious injury which resulted in complete loss of memory from one minute to the next.") He made no mention of lingering effects during trial, however. Moreover, at trial he

15

demonstrated good recall of his activities on the day of the crime, providing a detailed timeline. Murray's only other testimony as to his mental state was that, for a time, he thought Cornwell was "out to get [him]." Viewed very favorably as a statement about Murray's competence, his alleged belief could be seen as something that might have impacted his ability to assist in his defense for a reason other than incompetency. But there is simply nothing in the record that Murray—at any time in his life—has ever suffered from any mental disease or defect.

2.5 *Conclusion regarding* McGregor *factors*

In summary, there was a significant period of time—nearly 30 years—between the order to determine Murray's competence and the 2013 hearing. But in the 2013 hearing, the district court had the benefit of a contemporaneous mental examination finding Murray competent; both attorneys in Murray's case testified to no concerns about Murray's competence; the record reflected Murray's understanding of the case and rational assistance in his defense; and Murray's own testimony never clearly alleged that he was incompetent at the time of his trial. Reviewing the available evidence in this case, we cannot say the district court abused its discretion in finding that a retrospective hearing on Murray's competency was feasible.

As a result, the district court did not err in determining the retrospective competency hearing could rectify the procedural due process error in Murray's underlying case. See *Ford*, __ Kan. __, slip op. at 21; *Davis*, 281 Kan. 169, Syl. ¶ 5.

Murray presents his challenge only as a procedural competency claim under K.S.A. 22-3302; he does not present a substantive competency claim. See *Ford*, ___ Kan.

16

___, Syl. 3 ("A procedural competency claim is based on a district court's alleged failure to hold a competency hearing or an adequate competency hearing, while a substantive competency claim is founded on the allegation that an individual was tried and convicted while, in fact, incompetent."). Thus, our conclusion that the district court properly rectified his procedural competency claim resolves his appeal.

Affirmed.