IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 123,647

STATE OF KANSAS,
*Appellee,*

v.

ANTHONY DARRYL ALLEN,
*Appellant.*

SYLLABUS BY THE COURT

1.

The Sixth Amendment to the United States Constitution, applied to the states through the Fourteenth Amendment, guarantees criminal defendants the right to counsel at all critical stages of a criminal proceeding.

2.

The right to self-representation is implied from the Sixth Amendment right to counsel.

3.

To exercise the right to self-representation, a defendant must knowingly and intelligently waive the right to counsel. Whether a waiver is knowing and intelligent depends on the facts and circumstances of each case.

4.

A valid waiver of the right to counsel requires the district court to advise the defendant of the right to counsel, including appointed counsel if indigent; determine the defendant possesses the intelligence and capacity to appreciate the consequences of the

decision; and ensure the defendant understands the nature of the charges, the significance of the proceedings, and the potential penalties.

5.

On appeal, the State has the burden of showing that an accused was advised of the right to counsel and that the waiver of counsel was knowing and intelligent.

6.

A competency hearing, a hearing on a K.S.A. 60-455 motion, and a hearing on a motion to dismiss are generally critical stages of a criminal proceeding because of the substantial prejudice that could result from such hearings without representation by counsel.

7.

Structural errors are defects affecting the fundamental fairness of the trial mechanism, and are not amenable to a harmless error review; such errors require automatic reversal.

8.

Most errors that occur during a criminal proceeding, including those impacting a defendant's constitutional rights, can be evaluated for harmlessness; the nature and extent of the deprivation determines whether harmless error analysis applies. An error is harmless only if the party benefiting from the error proves beyond a reasonable doubt that it did not affect the outcome of the trial.

Review of the judgment of the Court of Appeals in 62 Kan. App. 2d 802, 522 P.3d 355 (2022). Appeal from Johnson District Court; TIMOTHY MCCARTHY, judge. Oral argument held March 29, 2024. Opinion filed June 5, 2026. Judgment of the Court of Appeals reversing the district court is affirmed in part and reversed in part. Judgment of the district court is affirmed.

*Adam Sokoloff*, of The Sokoloff Law Firm, of Olathe, argued the cause and was on the brief for appellant.

*Jacob M. Gontesky*, assistant district attorney, argued the cause, and *Stephen M. Howe*, district attorney, and *Kris W. Kobach*, attorney general, were with him on the briefs for appellee.

PER CURIAM: This case asks whether a defendant validly waived the right to counsel at critical pretrial stages and, if not, whether the error requires reversal. We agree with the Court of Appeals panel that both of the 2018 pretrial hearings at issue constituted critical stages and Anthony Darryl Allen was without counsel at both hearings without a valid waiver. But we part ways with the panel on the effect of this error: considering the extent and circumstances of the deprivation, the denial of counsel at these pretrial hearings was not structural and is instead amenable to a harmless error analysis. Because there is no reasonable possibility that the error affected the outcome of Allen's later trial, we affirm his convictions and sentence and reverse the panel's decision to the extent it held otherwise.

## FACTUAL AND PROCEDURAL BACKGROUND

Anthony Darryl Allen held a woman hostage in her apartment for several months, raped her twice during this period, and committed additional daily acts of physical, emotional, and mental abuse. The woman escaped and, during a standoff, Allen attempted suicide. He was later taken into custody. In August 2015, the State charged Allen with one count of aggravated kidnapping and two counts of rape.

*District Court Proceedings*

At a competency hearing in May 2017, the district court found Allen competent and then granted Allen's request to exercise his right to self-representation. The district court also designated standby counsel.

Later, in March 2018, Allen attended another competency hearing, which had been requested by the State. The district court again found Allen competent.

In May 2018, the court held a hearing on two pending motions: (1) Allen's one-line, pro se motion to dismiss and (2) the State's K.S.A. 60-455 motion regarding evidence of the tumultuous, on-again-off-again relationship between Allen and the victim, his prior acts of violence against her, and Allen's prior conviction for domestic violence against the victim. The court denied Allen's motion to dismiss; excluded the prior conviction; and put off ruling on the other K.S.A. 60-455 evidence, noting that admissibility would be revisited as it arose at trial.

At both of these hearings, Allen was self-represented and the district court discussed Allen's decision to proceed pro se.

At later hearings, occurring in July 2018, May 2019, and September 2019, the court again discussed Allen's decision to exercise his right to self-representation. At the July 2018 hearing, the court conducted a detailed colloquy regarding Allen's decision; Allen continued to insist he would represent himself at trial.

Allen represented himself during the first day of trial, but on the second day Allen requested to exercise his right to counsel and his appointed standby counsel took over. The jury found Allen guilty on all three counts, and the court sentenced him to 331 months' imprisonment. Allen filed a timely notice of appeal.

*Appellate Proceedings*

A panel of the Kansas Court of Appeals concluded Allen's waiver of the right to counsel in May 2017 was not knowing and voluntary, *State v. Allen*, 62 Kan. App. 2d 803, 809, 522 P.3d 355 (2022), a conclusion that neither party challenges.

Further, the panel held that the competency hearing in March 2018 and the motions hearing in May 2018 constituted critical stages requiring the assistance of counsel or a proper waiver of the right to counsel. Although the panel did not have access to the transcripts of the March or May 2018 hearings, it determined that Allen's waiver remained invalid. The panel concluded, relying on language from *State v. Jones*, 290 Kan. 373, 382-83, 228 P.3d 394 (2010), that violations of Allen's right to counsel constituted structural error. Accordingly, the panel reversed Allen's convictions and remanded to the district court. *Allen*, 62 Kan. App. 2d at 812.

In a concurrence, Judge Malone joined by Judge Bruns argued that "the Kansas Supreme Court should reevaluate whether a pretrial violation of a defendant's right to counsel or right to self-representation at a critical stage of the prosecution is subject only to structural error." *Allen*, 62 Kan. App. 2d at 816 (Malone, J., concurring).

The State petitioned for review, asserting that the Court of Appeals panel erred by (1) basing its decision on an incomplete, insufficiently designated record; (2) neglecting to acknowledge that Allen was in fact assisted by standby counsel; and arguing that, regardless, (3) a harmless error analysis should apply to an inadequate waiver of counsel at a pretrial hearing provided the defendant adequately waives counsel (or is represented) before the trial or plea.

After this court granted the State's petition for review, the district court filed an order settling the record pursuant to Supreme Court Rule 3.04(a) (2023 Kan S. Ct. R. at 24). The reconstructed record includes summaries and transcripts of the March and May 2018 hearings. We ordered that this reconstructed record be added to the record on appeal.

The parties presented oral argument on March 29, 2024. Although the parties' briefs predated the reconstructed record of the March and May 2018 hearings, the parties discussed the reconstructed record at oral argument.

At argument, the State acknowledged that a competency hearing was a critical stage. Further, the State conceded that there was not a sufficient waiver of the right to counsel at the March 2018 competency hearing. However, the State argued that the reconstructed record showed a sufficient waiver of counsel at the May 2018 hearing, at which the court had considered Allen's motion to dismiss and the State's K.S.A. 60-455 motion.

For its part, defense counsel acknowledged that Allen adequately waived counsel on July 11, 2018, prior to his trial. Defense counsel maintained, however, that the invalid 2017 waiver rendered the March 2018 competency determination procedurally suspect, and that inadequate waivers at the March and May 2018 hearings constituted structural errors requiring reversal.

Following oral argument, this court issued an order remanding the case and directing the district court to (1) determine if a retrospective competency determination was possible, and (2) if it was, then the district court must conduct a retrospective competency hearing to determine Allen's competency on March 23, 2018.

In May 2025, the district court filed a journal entry indicating it found a retroactive competency hearing could be performed, that this hearing had been performed with Allen represented by counsel, and that the district court found that Allen was competent as of March 23, 2018. Allen filed a notice indicating that he would not appeal this finding.

The issues remaining for our consideration are whether the May 2018 motion hearing constituted a critical stage; and if so, whether Allen knowingly and voluntarily waived his constitutional right to counsel prior to that hearing; and, if not, whether such error is structural or subject to a constitutional harmlessness analysis.

ANALYSIS

As a threshold matter, we acknowledge that certain arguments presented in the State's petition for review were based on alleged inadequacies in the record—alleging Allen failed to designate a complete record for his waiver arguments and that the panel erroneously drew conclusions based on an insufficient record.

We agree with the State that the register of action document in this case does not provide sufficient detail to enable meaningful review as to whether Allen knowingly and voluntarily waived his right to counsel at the March or May 2018 hearings.

The present record, however, is sufficient to enable meaningful review of the issues before us, namely, the adequacy of Allen's purported waiver of the right to counsel at alleged critical stages. And the parties have had a full and fair opportunity to present their positions based on the reconstructed record.

Because this court exercises unlimited review over questions involving the rights to counsel and self-representation, *State v Bunyard*, 307 Kan. 463, 470, 410 P.3d 908 (2018), we address the issues raised on review based on this reconstructed record.

1. *The March and May 2018 hearings were critical stages implicating a constitutional right to counsel.*

The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, guarantees criminal defendants the right to counsel during all critical stages of a criminal proceeding. *State v. Trass*, 319 Kan. 525, 536, 556 P.3d 476 (2024). Critical stages of a criminal proceeding are those that hold "significant consequences for the accused." *Bell v. Cone*, 535 U.S. 685, 696, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002). Consequently, a defendant is entitled to counsel at any proceeding where an attorney's assistance may avoid the substantial prejudice that could otherwise result from the proceeding. See *Coleman v. Alabama*, 399 U.S. 1, 9, 90 S. Ct. 1999, 26 L. Ed. 2d 387 (1970).

The parties concede that the March 2018 competency hearing constituted a critical stage. We agree.

This leaves us to resolve whether the May 2018 hearing—at which the district court addressed Allen's motion to dismiss and the State's K.S.A. 60-455 motion—was a critical stage. Because the critical-stage analysis necessarily involves some consideration of the merits of the event in question, see *State v. Jackson*, 255 Kan. 455, 461, 874 P.2d 1138 (1994), we consider what was at stake and what happened at the May 2018 hearing.

Allen's motion to dismiss stated simply:

> "COMES NOW, ANTHONY ALLEN, pro se, with standby counsel Zach V. Thomas, Attorney at law, and hereby requests the court dismiss all charges for lack of evidence outside of hearsay statements wrongfully admitted into court."

The State did not file a response. At the hearing, it argued that Allen failed to understand the meaning of hearsay and, more broadly, the State had presented substantial physical evidence at the preliminary hearing. The district court denied the motion.

Although a hearing on a motion to dismiss might generally constitute a critical stage, Allen's one-sentence motion failed to reference any specific pieces of evidence as hearsay and presented no substantial questions of law or triable issues of fact. Based on the circumstances, we conclude that Allen's conclusory and unsupported motion to dismiss did not transform the May 2018 hearing into a critical stage. To hold otherwise would expand the concept of "critical stage" beyond situations where counsel's assistance would be beneficial. Cf. *Jackson*, 255 Kan. at 461 ("However, if there is no substantial question of law or triable issue of fact and the files and records conclusively show that the defendant is not entitled to relief on the motion, then there is no requirement that a hearing be held or that counsel be appointed.").

However, the State's K.S.A. 60-455 motion sought admission of evidence related to Allen's long and abusive relationship with the victim and evidence of a prior conviction in Minnesota related to domestic violence toward the victim in this case.

Because of the substantial risk of prejudice caused by K.S.A. 60-455 evidence, and because of the substantive legal arguments involved in the consideration of such motions, we conclude that the portion of the May 2018 hearing related to the State's motion constituted a critical stage during which Allen could have benefited from counsel.

9

We affirm the Court of Appeals' conclusion that the May 2018 hearing was a critical stage for purposes of Allen's constitutional right to counsel or self-representation.

2. *Allen's standby counsel did not function as counsel.*

Having concluded that these hearings constituted critical stages, we next evaluate whether Allen in fact did have the benefit of counsel by virtue of his appointed standby counsel. If so, Allen's claims of error would be moot and would require reversal of the Court of Appeals' decision.

The court exercises unlimited review over questions involving the rights to counsel and self-representation. *Bunyard*, 307 Kan. at 470.

Generally, standby counsel does not qualify as counsel under the Sixth Amendment. *King v. Bobby*, 433 F.3d 483, 490 (6th Cir. 2006). But, as the State points out, some courts have suggested that standby counsel may satisfy the role of counsel based on extensive participation. See, e.g., *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997) ("Perhaps in a case where standby counsel held that title in name only and, in fact, acted as the defendant's lawyer throughout the proceedings, we would consider a claim of ineffective assistance of standby counsel.").

Since Allen's waiver was admittedly insufficient in May 2017, the question is whether his standby counsel functioned as Sixth Amendment counsel during the two 2018 hearings at issue. The record reveals standby counsel did not participate in any substantive way at the March or May 2018 hearings. In March 2018, after the court found Allen competent, standby counsel noted that he had advised Allen to not file certain motions unrelated to the competency matter. At the May 2018 hearing, standby counsel did not speak on either the motion to dismiss or the K.S.A. 60-455 motion. Standby counsel merely noted for the record that he had explained a motion to Allen that standby

10

counsel felt was "integral and vital to his defense," but Allen ultimately chose not to file it.

The record shows that Allen retained control of his defense throughout both relevant hearings and standby counsel did not take on the normal role of counsel. We conclude that Allen's standby counsel was not standby counsel "in name only," and therefore did not cure any insufficient waiver. Cf. *King*, 433 F.3d at 490.

3. *Allen did not adequately waive his right to counsel prior to or at the March 2018 and May 2018 hearings.*

Having concluded that these were critical stages at which Allen was uncounseled, we next ask whether Allen had adequately waived his right to counsel. The parties agree that there was no valid waiver prior to or at the March 2018 competency hearing, but dispute whether Allen validly waived his right to counsel prior to the May 2018 motions hearing.

Although neither the United States nor the Kansas Constitutions explicitly provide for a right of self-representation, the right has been implied from the right to counsel granted in the Sixth Amendment. See *Faretta v. California*, 422 U.S. 806, 821, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). To exercise the right to self-representation, a defendant must voluntarily, knowingly, and intelligently waive the right to counsel. 422 U.S. at 835; see also *Bunyard*, 307 Kan. at 470.

We exercise unlimited review over questions involving the interrelated rights to counsel and self-representation. *Bunyard*, 307 Kan. at 470. However, the determination of whether a waiver of the right to counsel was knowingly and intelligently made depends on the facts and circumstances of each case. *State v. Buckland*, 245 Kan. 132, 137, 777 P.2d 745 (1989). As a result, we review a district court's findings on a waiver of

11

counsel for substantial competent evidence. See *State v. Hughes*, 290 Kan. 159, 170, 224 P.3d 1149 (2010). The State has the burden of showing that an accused was advised of his or her right to counsel and that their waiver of counsel was knowingly and intelligently made. *State v. Youngblood*, 288 Kan. 659, 662, 206 P.3d 518 (2009).

A valid waiver of the right to counsel requires the district court to advise the defendant of the right to counsel, including appointed counsel if indigent; determine the defendant possesses the intelligence and capacity to appreciate the consequences of the decision; and ensure the defendant understands the nature of the charges, the significance of the proceedings, and the potential penalties. *State v. Burden*, 311 Kan. 859, 863, 467 P.3d 495 (2020).

To assure the defendant appreciates the consequences of waiving representation to counsel, the district court should explain that the defendant will be held to the same standards as an attorney; that the judge will not assist in or provide advice about presenting a defense; and that it is advisable to have an attorney because many trial techniques, evidence rules, and the presentation of defenses require specialized training and knowledge. *Burden*, 311 Kan. at 864. Although we have approvingly cited cases employing a multi-factor inquiry, we have eschewed the use of a checklist, instead directing that "courts weigh whether a defendant has knowingly and intelligently waived the right to counsel by examining the circumstances of each case." *Burden*, 311 Kan. at 864.

The waiver discussion during the May 2018 hearing occurred prior to the district court's ruling on the motions. If Allen adequately waived his right to counsel during this discussion there is no Sixth Amendment violation.

The court began the inquiry by asking Allen his educational background and whether he had any legal training. Allen replied that he had a college background but that

12

he did not have any legal training. Allen asserted he understood how jury trials worked by reading about them in the law library. When asked if he had completed research on various motions that he intended to file, Allen responded, "Yes, and mostly drop all the charges." The court then asked:

> "Now you understand that if you proceeded to jury trial by yourself and that you asked inappropriate questions or don't follow the procedure in selection of the jury in opening statements in cross examination, that you will not be able to ask any questions that I'll have you sit down and we'll proceed, do you understand."

Allen said he understood. The court next asked if Allen understood he had standby counsel, and that Allen could both ask standby counsel questions and ask standby counsel to take over at any time. Allen replied that he wanted to fire standby counsel, and the court explained he could not. The court then asked the State and standby counsel to weigh in on whether Allen's waiver was knowing and intelligent.

Although disclaiming it had "much of a dog in that fight," the State indicated it had "significant concerns" about Allen's ability to represent himself. The State noted the difficult rules of evidence and other legal issues that Allen would need to navigate.

Standby counsel said:

> "Judge [I] had discussions with Mr. [Allen. A]t this point there are certain motion[s] I feel that are integral and vital to his defense, I've discussed them with him at length, described them to him and he [has made the decision] not to file those, he did not want know [sic] file those. . . . [I]t is Mr. Allen's case I'll defer to the Court on other comments just voicing my fears that certain things that I think are very instrumental and, ultimately, vital to his defense, yet, attorney [unclear] in this case present bid [unclear] is that he doesn't want to file that, I can't as standby argue with his strategy, I guess. [Unclear]."

13

Standby counsel reiterated his "fears" about the consequences of Allen's choices not to file certain motions that counsel believed were "vital to his defense." The district court then recommended Allen let standby counsel proceed on his behalf, "if not today, at some point in the near future." With that, the court turned to Allen's motion to dismiss.

As noted above, a valid waiver requires the court "advise the defendant of the right to counsel and to appointed counsel if indigent." *Burden*, 311 Kan. at 863. In at best partial satisfaction of this requirement, the district court advised Allen to have standby counsel proceed on his behalf. Also, the defendant to "possess the intelligence and capacity to appreciate the consequences of his or her decision." 311 Kan. at 863. As noted above, both the competency evaluator and the State raised concerns about Allen's ability to understand his rights in the case. His motion to dismiss belies a lack of understanding about the hearsay rules and, more generally, the rules of evidence. Finally, and significantly, Allen faced a host of felony charges, and his potential punishment was substantial. The district court failed to ask about Allen's understanding of the nature of the charges against him and the range of permissible punishments he faced. 311 Kan. at 863.

The record does not contain substantial competent evidence to establish a knowing and intelligent waiver at the May 2018 hearing. Accordingly, we affirm the Court of Appeals' conclusion that permitting Allen to represent himself during critical pretrial stages without a knowing and intelligent waiver of his right to counsel constituted a violation of his Sixth Amendment rights.

4. *Error Analysis: There is room for a harmless error analysis and, here, the errors were harmless.*

In its 2022 decision, the Court of Appeals relied on *Jones*, 290 Kan. 373, among others, to conclude it was duty-bound to treat the violation as structural error requiring reversal. *Allen*, 62 Kan. App. 2d at 812.

In *Jones*, a criminal defendant was not allowed to represent himself at his preliminary hearing. Although he later agreed to be represented by counsel at his jury trial, he appealed his convictions and argued that the denial of his right to self-representation at the preliminary hearing constituted reversible error. Although a panel of the Court of Appeals held the error to be harmless, this court reversed, concluding in categorical fashion that "[a] violation of a Sixth Amendment right to counsel is subject to structural error analysis." *Jones*, 290 Kan. at 382.

Relying on *Jones*, the Court of Appeals concluded the error "[was] structural in nature and could not be cured by Allen's subsequent knowing and intelligent waiver of his right to counsel prior to trial." *Allen*, 62 Kan. App. 2d at 812.

The State argued for the first time on petition for review that we should apply a harmless error analysis, taking up the position espoused by Judge Malone's concurring opinion. Allen did not file a response to the petition for review or a supplemental brief and maintained at oral argument that a structural error framework applied.

The question of what type of error analysis applies to a constitutional failure in a criminal trial is a question of law over which this court has unlimited review. *State v. Cantu*, 318 Kan. 759, 768, 547 P.3d 477 (2024). Further, this court has "unlimited review over interpretation of [its] precedents." *Marcus v. Swanson*, 317 Kan. 752, 764, 539 P.3d 605 (2023). And "[w]hether an error may be reviewed for harmlessness is a question of

15

law subject to plenary review." *State v. Bentley*, 317 Kan. 222, 232, 526 P.3d 1060 (2023).

As the panel's concurrence notes, errors are structural when they defy analysis by harmless error standards because they affect the framework within which the trial proceeds. 62 Kan. App. 2d at 814. The United States Supreme Court has recognized a limited category of errors which violate constitutional rights "so basic to a fair trial that their infraction can never be treated as harmless error." *Chapman v. California*, 386 U.S. 18, 23-24, n.8, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). Similarly, this court has found structural errors in a limited class of cases, including violations of the implied Sixth Amendment right to self-representation at trial. See, e.g., *Bunyard*, 307 Kan. at 471 ("'Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to "harmless error" analysis.'"). When the effects of a constitutional error cannot be adequately measured for harmlessness, automatic reversal is necessary. *Cantu*, 318 Kan. at 770.

However, most errors that occur during criminal proceedings, even those affecting a defendant's constitutional rights, can be reviewed to determine whether they are harmless. *Cantu*, 318 Kan. at 769; see also *Bentley*, 317 Kan. 222, Syl. ¶ 2 (trial court's failure to obtain constitutionally sufficient jury trial waiver before a defendant stipulates to an element of a charged crime is not structural error, but rather is subject to harmless error review); *State v. McDaniel*, 306 Kan. 595, 604, 395 P.3d 429 (2017) (violation of right to be present at critical stages subject to harmless error analysis); *Herbel*, 296 Kan. 1101, Syl. ¶ 2, 299 P.3d 292 (2013) (applying harmless error analysis to denial of constitutional right to be present at critical stage).

In *State v. Cantu*, which was decided after the panel issued its opinion here, we discussed structural and harmless error in depth and noted that an error implicating a

constitutional right will not always be structural: the extent and circumstances of the constitutional deprivation drive the framework of the error analysis. 318 Kan. at 774. As we explained: "There may be instances where the deprivation is so slight, error is amenable to harmless error analysis. But where the impairment is closer to absolute, it '"implicates the basic consideration of fairness"' expected in a criminal trial." *Cantu*, 318 Kan. at 774. "Thus, depending on the nature of the right at stake, both the extent of the deprivation and the circumstances of its deprivation can be highly relevant factors to the type of error analysis that applies." 318 Kan. at 772. If *Cantu* does not already do so, we abrogate the categorical language in *Jones* and our other precedent broadly holding that a Sixth Amendment violation can *never* be analyzed for harmlessness.

Under *Cantu*'s sliding scale framework, we conclude that a pretrial violation of a defendant's right to counsel or right to self-representation at a critical stage of the prosecution, cured prior to trial, is not subject only to structural error.

Undertaking that inquiry here, we note that the deprivation cannot be characterized as "slight": Allen represented himself at critical stages (a competency hearing and a motions hearing) prior to waiving his right to counsel in the manner prescribed by Kansas law.

However, unlike the deprivation in *Cantu*, the violation was far from "absolute" or "complete." It was limited to a portion of the pretrial proceedings and was repaired prior to trial. It is undisputed that the district court properly advised Allen of his rights and obtained a knowing and intelligent waiver from Allen at a hearing held on July 11, 2018, as well as at the final pretrial conference held a few days before trial. At that time, Allen knowingly and intelligently waived his right to counsel. He then reasserted his right to counsel on the second day of trial. It is also undisputed that, throughout the entirety of pretrial proceedings, Allen repeatedly and unequivocally maintained that he wanted to represent himself, suggesting that the failure to obtain a valid waiver for the pretrial

hearings at issue is of a kind "less likely to impair the overall integrity of the trial." *Cantu*, 318 Kan. at 775. On the facts of this case, where there was a valid waiver prior to trial, the district court's failure to obtain a sufficient waiver of Allen's right to counsel at these critical, discrete pretrial stages is not per se structural but is amenable to a harmless error analysis.

Applying the constitutional harmless error framework as defined in *Chapman*, 386 U.S. 18, we conclude the State has established that, although Allen represented himself at the March 2017, March 2018, and May 2018 hearings without having made a knowing and intelligent waiver of his right to counsel, there is no reasonable possibility that the error affected the outcome or contributed to the verdict.

While the failure to obtain a proper waiver prior to a competency hearing would typically raise the specter of reversible error, this court remanded to ensure that a retrospective competency hearing could be held; the district court found that it could; and it conducted a retrospective hearing with counsel that resulted in a finding that Allen was competent on March 23, 2018—a conclusion that Allen does not challenge. Cf. *State v. Jenkins*, 308 Kan. 545, 559, 422 P.3d 72 (2018) ("If the court fails to suspend the proceedings and conduct a competency hearing, a retrospective hearing may rectify the error."); *State v. Murray*, 302 Kan. 478, 484-90, 353 P.3d 1158 (2015) (affirming a district court's conclusion that a retrospective competency hearing was feasible).

As for the May 2018 hearing at which the district court considered the State's K.S.A. 60-455 motion, the outcome on that motion favored defendant: certain evidence was disallowed, and a ruling on other evidence was put off until trial, by which time the Sixth Amendment violation had been cured. These facts, in combination with the strength of the State's evidence at trial, lead us to readily conclude there is no reasonable possibility that the pretrial failures here contributed to the jury's verdict.

The error in allowing Allen to proceed pro se at two pretrial hearings without a valid waiver of counsel was harmless beyond a reasonable doubt.

Judgment of the Court of Appeals reversing the district court is affirmed in part and reversed in part. Judgment of the district court is affirmed.

LUCKERT and WILSON, JJ., not participating.
WALSH, J., assigned.

* * *

WALSH, J., dissenting:  I agree with all aspects of the majority's decision up to the point that it concludes that the March 2018 competency hearing, conducted in violation of the Sixth Amendment, can be considered harmless on the facts of this case.

The majority appropriately recognizes, in contrast to the *State v. Jones*, 290 Kan. 373, 228 P.3d 394 (2010), language by which the panel felt bound, that a pretrial violation of a defendant's right to counsel or right to self-representation at a critical stage *may* be subject to a harmlessness analysis under some circumstances. *State v. Allen*, 322 Kan. __, __, slip op. at 17 (citing *State v. Cantu*, 318 Kan. 759, 772, 774, 547 P.3d 477 [2024]). However, our shift away from the categorical "always structural" language in *Jones*, et al., to the sliding scale for determining the applicable error analysis espoused in *Cantu*, et al., does not and cannot have the effect of rendering the structural error doctrine obsolete. As applied by the majority here, it threatens to.

That is because, at least in my view, the deprivation of Allen's right to counsel at his March 2018 competency hearing is precisely the type of error that "def[ies] analysis by 'harmless error standards'":  I simply cannot agree to recognize, as the majority appears to, that a retrospective competency hearing can cure an uncounseled—thus unconstitutional and procedurally suspect—determination of competency, given the

circumstances. And the impact of this error on Allen's later hearings and jury trial, which he undertook as an uncounseled litigant without a reliable determination of competency, is not amenable to the "outcome-based" test of harmlessness. I would conclude that reversal is required.

The State charged Allen with multiple crimes after he took the victim hostage in her apartment and abused her for several months. When she escaped, he attempted suicide during a standoff with police by swallowing bug spray and laundry detergent. He was referred for competency evaluations on several occasions between his arrest in 2015 and his July 2018 trial. He was, as the Court of Appeals panel's concurrence notes, a "difficult defendant." 62 Kan. App. 2d at 815. After reaching his third court-appointed attorney, Allen requested to represent himself moving forward. The district court deferred ruling on this request in March 2017 and ordered yet another competency evaluation. At a later hearing, in May 2017, the court granted Allen's request to self-represent. I agree with the parties, the panel, and the majority that the district court failed to conduct an appropriate waiver colloquy at this 2017 hearing and therefore, at this point, Allen had not knowingly and intelligently waived his right to counsel. Still, a year later in March 2018, the district court found Allen was competent without the benefit of counsel.

Though not briefed by the parties, the possibility of a retrospective competency hearing was raised at oral argument, and this court ultimately ordered the district court to (1) determine whether a competency hearing was appropriate when considering the factors set out in *McGregor v. Gibson*, 248 F.3d 946, 962-63 (10th Cir. 2001), and (2) if so, conduct the hearing to determine if Allen was competent on the date of this uncounseled competency hearing. The district court found such a determination was possible and found Allen was competent.

Based on the unchallenged findings of this retrospective competency hearing, the majority concludes Allen's uncounseled competency hearing was harmless. This appears

to be a newly announced rule. We first acknowledged retrospective competency hearings in *State v. Davis*, 281 Kan. 169, 181, 130 P.3d 69 (2006) (observing the court "has not specifically addressed the issue of retrospective competency hearings"), *overruled on other grounds by State v. Ford*, 302 Kan. 455, 467, 469-77, 353 P.3d 1143 (2015). Since then, we have discussed retrospective competency hearings in several cases, all of which involved a failure to hold a competency hearing (a due process violation), rather than an uncounseled competency hearing (a Sixth Amendment violation). See, e.g., *State v. Trass*, 319 Kan. 525, 526, 556 P.3d 476 (2024); *State v. Ford*, 316 Kan. 558, 558-59, 519 P.3d 456 (2022); *State v. Jenkins*, 308 Kan. 545, 553, 558-63, 422 P.3d 72 (2018); *Ford*, 302 Kan. at 461 (failure to conduct competency hearing is a due process violation); *State v. Murray*, 302 Kan. 478, 484-90, 353 P.3d 1158 (2015).

Respectfully, I cannot endorse the majority's rule that a retrospective competency hearing like Allen's, held some six years after the fact, magically enables us to conduct a harmless error analysis that compels a finding of harmlessness here. As an initial matter, I am skeptical whether retrospective competency hearings can accurately divine a defendant's competency at some specific date in the past. A defendant's competency is fluid, and at least part of the evidence considered by the district court would be the district court's knowledge of the defendant's demeanor up to the day in question. See *Davis*, 281 Kan. at 190 (McFarland, C.J., dissenting) (a defendant's competency status may change); *State v. Woods*, 301 Kan. 852, 863, 348 P.3d 583 (2015) ("In addition, it is noteworthy defense counsel did not raise concerns about Woods' competency after the initial hearing, even though the district court gave her an opportunity to make an additional record after Woods' yawning and laughing during trial."); K.S.A. 22-3302(g) (mandating defendant's presence at competency hearing). But memories fade. Such evidence is difficult if not impossible to evaluate years later. A district court wields enormous and diverse powers, but time travel is not one of them. See *State v. McRae*, 163 N.C. App. 359, 372-73, 594 S.E.2d 71 (2004) (Timmons-Goodson, J., concurring) ("Trial judges in this state try hundreds of different cases involving hundreds of different

criminal defendants each year and thousands of cases involving thousands of different criminal defendants over the course of their term. Therefore, recollecting with certainty the competence of one particular defendant tried several years ago is a monumental task, ripe with inherent difficulties that have been repeatedly noted by the United States Supreme Court and other courts in this country."); Parsons, *Being There: Constructive Denial of Counsel at a Competency Hearing as Structural Error Under the Sixth Amendment*, 56 S.D. L. Rev. 238, 254 (2011) ("Where a defendant has been constructively denied the right to counsel at a mental competency hearing, a retrospective hearing would truly be 'a speculative inquiry into what might have occurred in an alternative universe.'").

As this court recognized, the United States Supreme Court has tepidly described retrospective competency hearings as "inherent[ly] difficult[]." See *Drope v. Missouri*, 420 U.S. 162, 183, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975) (observing retrospective competency hearings involve "inherent difficulties . . . under the most favorable circumstances" and declining to order one when the hearing should have occurred three years prior); *Pate v. Robinson,* 383 U.S. 375, 387, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966) (explaining the Court had "previously emphasized the difficulty of retrospectively determining an accused's competence to stand trial" and rejecting a request to order one because "Robinson's hearing would be held six years after the fact [which] aggravates these difficulties"); *Dusky v. United States,* 362 U.S. 402, 403, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960) (acknowledging "the difficulties of retrospectively determining the petitioner's competency as of more than a year ago"); *Ford*, 302 Kan. at 466 (recognizing *Drope, Pate,* and *Dusky*).

And although many courts, including the Tenth Circuit, have developed tests to ascertain when such a hearing is permissible, I worry that without further guidance from the Court, we set a constitutionally suspect example here. See *People v. Ary*, 51 Cal. 4th

510, 522, 246 P.3d 322 (2011) (Werdegar, J., concurring) ("Reason exists to believe the United States Supreme Court would not approve the procedure.").

Moreover, even if the district court, in 2025, accurately determined Allen was competent in March 2018 thus addressing the due process concern, Allen's case presents the unique problem of an uncounseled competency hearing *followed by* self-representation until the second day of trial, thus implicating the Sixth Amendment as well.

In *State v. Cantu*, we outlined the difference between structural error and harmless error. Like the United States Supreme Court, this court has identified several alternative rationales guiding our structural error analysis:  (1) "the error at issue compromised the fundamental fairness of the trial mechanism, both from the perspective of the court's function and the defendant's right to due process"; (2) "whether the error's effect on the trial's outcome is difficult to measure or simply irrelevant"; and (3) "the extent of the particular deprivation can be a factor in our finding of structural error." *Cantu*, 318 Kan. at 771-72. We concluded that, "depending on the nature of the right at stake, both the extent of the deprivation and the circumstances of its deprivation can be highly relevant factors to the type of error analysis that applies." 318 Kan. at 772. With these rationales in mind, I would diverge from my colleagues' application of that sliding scale in this case and would conclude that allowing Allen to proceed uncounseled at the March 2018 competency hearing constituted a structural error requiring reversal.

Here, all parties agree that Allen participated in the March 2018 competency hearing without counsel or an appropriate waiver. The majority concludes this Sixth Amendment violation is amenable to harmless error analysis and indeed is harmless because the district court found Allen was in fact competent at the hearing, and because Allen adequately waived his right to counsel prior to trial (and ultimately had the benefit of counsel beginning the second day of trial). But even if we treat a retrospective

23

determination as reliable, this does nothing to remediate the broader problem: that the failure to conduct a counseled competency hearing in March 2018 may have potentially affected any waiver of counsel analysis conducted later in the case. See *State v. Burden*, 311 Kan. 859, 862-71, 467 P.3d 495 (2020) (explaining mental competency to stand trial, how a defendant must possess the intelligence and capacity to appreciate the consequences of their decision to self-represent, and the mental competency to self-represent). Put differently, had counsel participated in the March 2018 competency hearing, then it is possible the arguments and evidence presented at that hearing would have impacted future discussions about Allen's waiver of the right to counsel. See *Indiana v. Edwards*, 554 U.S. 164, 175-76, 128 S. Ct. 2379, 161 L. Ed. 2d 345 (2008) ("In certain instances an individual may well be able to satisfy *Dusky*'s mental competence standard, for he will be able to work with counsel at trial, yet at the same time he may be unable to carry out the basic tasks needed to present his own defense without the help of counsel."); *Appel v. Horn,* No. CIV.A. 97-2809, 1999 WL 323805, at *16 (E.D. Pa. 1999) ("Had Kraft and Crowe performed their function as Appel's counsel, the evidence which they should have presented to the evaluating psychiatrist, Dr. Schwartz, may have changed both her opinion and the court's opinion about Appel's competency to waive his right to counsel. Once the trial court concluded that he was competent to waive his right to counsel, Appel was deprived of the guiding hand of counsel at every later stage of the proceedings which eventually lead to his death sentence.").

And the failure to have counsel in March 2018 may have infected more than Allen's future, pretrial waiver of counsel: without a reliable determination of competence, an incompetent Allen potentially proceeded through the remainder of his pretrial hearings, including the May 2018 hearing on Allen's motion to dismiss and the State's K.S.A. 60-455 motion, and the first day of trial in violation of the Sixth Amendment and his due process rights.

In my view, the extent and nature of the error here is simply not amenable to the "outcome-based" analysis of harmless-error review. *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991) (Structural errors require a new trial regardless of whether prejudice has been shown because they constitute a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself"). It must be treated as structural because it compromised the fundamental fairness expected in a criminal trial. *McCoy v. Louisiana*, 584 U.S. 414, 427, 138 S. Ct. 1500, 200 L. Ed. 2d 821 (2018). The majority's recognition that not all errors with constitutional dimensions—even those violating the Sixth Amendment—are structural does not abrogate the historical recognition that the Sixth Amendment right to counsel is one of the cornerstones of our criminal justice system; that because the right to self-representation is "at odds with the right to be represented by counsel, the courts must indulge every reasonable presumption against waiver of the right to counsel"; and thus any denial of that right is significant, particularly here where the violation extends through the first day of trial. *Burden*, 311 Kan. at 863. Indeed, despite the strength of the State's case against him, we simply cannot know how Allen's pretrial and trial strategy might have been different had this confluence of constitutional violations and questionable competency not occurred. Any attempt to do so would be purely speculative. When the effects of a constitutional error cannot be adequately measured for harmlessness, automatic reversal is necessary. *Cantu*, 318 Kan. at 770. I would therefore affirm the panel's reversal of Allen's convictions and remand for further proceedings.

25